**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

WYNDHAM VACATION OWNERSHIP, INC.
a Delaware corporation; WYNDHAM
VACATION RESORTS, INC., a Delaware
corporation; WYNDHAM RESORT
DEVELOPMENT CORPORATION; an Oregon
Corporation; SHELL VACATIONS, LLC, an
Arizona limited liability company; SVC-WEST,
LLC, a California limited liability company;
SVC-AMERICANA, LLC, an Arizona limited
liability company; and SVC- HAWAII, LLC, a
Hawaii limited liability company,
Plaintiffs,
v.
THE MONTGOMERY LAW FIRM, LLC, a
Missouri limited liability company;
MONTGOMERY & NEWCOMB, LLC, a
Missouri limited liability company; M. SCOTT
MONTGOMERY, ESQ., an individual; W.
TODD NEWCOMB, ESQ., an individual; CLS,
INC. d/b/a ATLAS VACATION REMEDIES
and also d/b/a PRINCIPAL TRANSFER
GROUP, a Missouri corporation; ATLAS
VACATION REMEDIES, LLC, a Missouri
limited liability company; PRINCIPAL
TRANSFER GROUP, LLC, a Missouri limited
liability company; DONNELLY SNELLEN, an
individual; JASON LEVI HEMINGWAY, an
individual; MUTUAL RELEASE
CORPORATION a/k/a 417 MRC LLC, a
Missouri limited liability company; DAN
CHUDY, an individual; MATTHEW TUCKER,
an individual; and CATALYST CONSULTING
FIRM LLC, a Missouri limited liability company,
Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO.
8:19-cv-01895-CEH-CPT**


**DEFENDANTS' CONSOLIDATED
ANSWERS, AFFIRMATIVE
DEFENSES AND
COUNTERCLAIMS**

1

## I.   **CONSOLIDATED ANSWERS**

COME NOW the Answering Defendants, Atlas Vacation Remedies, LLC; Jason Hemingway; Principal Transfer Group, LLC; Donnelly Snellen; CLS, Inc.; W. Todd Newcomb, Esq., M. Scott Montgomery, Esq., and the lawyers' law firms The Montgomery Law Firm, LLC; Montgomery & Newcomb, LLC. The Answering Defendants make no answer or response as to the remaining Defendants. Wherefore, and  admitting only so much as is expressly admitted herein, Answering Defendants, respond to Plaintiffs' Complaint pursuant to the Federal Rules of Civil Procedure, as follows:

1. Denied that Plaintiffs have any legitimate or lawful "premise" to bring the present action against Answering Defendants.

2. Denied that these are the only methods of conducting a vacation.

3. Without knowledge as to any entities other than the Answering Defendants

4. Denied.

5. Admitted that there are purported contracts, denied that they are valid.

6. Denied.

7. Without knowledge as to any entities other than the Answering Defendants. Denied that Wyndham's alleged "Ovation" program is legitimate or effective.

8. Without knowledge as to any entities other than the Answering Defendants. Otherwise denied.

9. Denied as to the Answering Defendants.

10.  Without knowledge as to the Florida Bar Rules of Professional Conduct. Otherwise denied. Moreover, Wyndham's pleaded threats under the Florida Rules of Professional Conduct have no extraterritorial effect and also are improper herein, inasmuch as the

Florida Rules of Professional Conduct state, as follows:

> "Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra- disciplinary consequences of violating such duty."

11. Denied.

12. Denied.

13. Denied as to the Answering Defendants.

14. Denied as to the Answering Defendants.

15. Denied as to the Answering Defendants.

16. Denied as to the Answering Defendants.

17. Denied as to the Answering Defendants.

18. Denied as to the Answering Defendants.

19. No pleading is required as to the contents of a written document, which speak for themselves. Otherwise denied.

20. Denied as to the Answering Defendants.

21. Denied.

22. Denied.

23. Denied.

24. Denied that the Plaintiffs' pleading is an "Amended Complaint". Admitted that the Plaintiff's plead purports to so plead, but denied any applicability or legitimacy of

Plaintiffs' purported causes of action.

25. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

26. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

27. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

28. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

29. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

30. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

31. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

32. Denied.

33. Denied. Averring yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly and *ipse dixit* assumes conspiratorial conduct.

34. Admitted.

35. Admitted.

36. Denied.

37. Denied.

38. Denied.

39. Denied that CLS has ever been in the timeshare release or any similar business. Admitted as to any records of the State of Missouri. Inasmuch as federal law is implicated herein, denied that any purported address in any alleged State has any materiality herein. Denied that any address has been "changed" based upon the filing of the present Complaint.

40. Denied that CLS has ever been in the timeshare release or any similar business. Denied that either alleged "fictitious name" was actually used.

41. Denied that Atlas has ever been in the timeshare release or any similar business. Admitted as to any records of the State of Missouri.

42. Admitted as to any records of the State of Missouri. Admitted as to place of business.

43. Denied.

44. Admitted.

45. Admitted that Hemingway is an individual, a resident of the State of Missouri, and has paid his debt to the State of Missouri, otherwise denied. Objected to under Rule 12(f) FRCP.

46. Without knowledge as to any entities other than the Answering Defendants.

47. Without knowledge as to any entities other than the Answering Defendants.

48. Without knowledge as to any entities other than the Answering Defendants.

49. Without knowledge as to any entities other than the Answering Defendants.

50. Without knowledge as to any entities other than the Answering Defendants.

51. Subject matter jurisdiction is admitted to. Denied that any cause of action is stated. Otherwise denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Wyndham's purported actions are unknown to Answering Defendants. Otherwise denied.

57. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

58. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

59. Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied. Denied as to the purported "legal effect" of Wyndham's fraudulently induced contracts.

60. Denied.

61. Denied.

62. Denied.

63. The activities of MRC are unknown to Answering Defendants. It is further averred that neither CLS or Atlas has ever been in the timeshare release or similar business. Admitted as to any representations made by Answering Defendants to the State of Missouri.

64. Answering Defendants have no affiliation with MRC, and whether for the stated "additional reasons" (which are likewise denied) or otherwise. However, the Lawyer Defendants had represented MRC in filing a response to a complaint against MRC filed with the office of the Missouri Attorney General.

65. Denied.

66. The activities of Catalyst are unknown to Answering Defendants. However, upon

information and belief, it is believed that Catalyst no longer exists and/or has no operations. Catalyst is not an agent for any of the Answering Defendants, is not authorized to perform any act in behalf of Answering Defendants, and  any purported activities to the contrary are thus *ultra vires.*

67. The activities of Catalyst are unknown to Answering Defendants. Catalyst is not an agent for the Answering Defendants, is not authorized to perform an act in behalf of Answering Defendants, and  any purported activities to the contrary are thus *ultra vires.*

68. The activities of Catalyst are unknown to Answering Defendants. Catalyst is not an agent for the Answering Defendants, is not authorized to perform an act in behalf of Answering Defendants, and  any purported activities to the contrary are thus *ultra vires.*

69. The activities of Catalyst are unknown to Answering Defendants. Catalyst is not an agent for the Answering Defendants, is not authorized to perform an act in behalf of Answering Defendants, and  any purported activities to the contrary are thus *ultra vires.*

70. The activities of Catalyst are unknown to Answering Defendants. Catalyst is not an agent for the Answering Defendants, is not authorized to perform an act in behalf of Answering Defendants, and  any purported activities to the contrary are thus *ultra vires.*

71. The activities of Catalyst are unknown to Answering Defendants. Catalyst is not an agent for the Answering Defendants, is not authorized to perform an act in behalf of Answering Defendants, and  any purported activities to the contrary are thus *ultra vires.*

72. The activities of Catalyst are unknown to Answering Defendants. Catalyst is not an agent for the Answering Defendants, is not authorized to perform an act in behalf of Answering Defendants, and  any purported activities to the contrary are thus *ultra vires.*

73. The activities of Catalyst are unknown to Answering Defendants. Catalyst is not an agent

for the Answering Defendants, is not authorized to perform an act in behalf of Answering Defendants, and any purported activities to the contrary are thus *ultra vires.*

74. The activities of Catalyst are unknown to Answering Defendants. Catalyst is not an agent for the Answering Defendants, is not authorized to perform an act in behalf of Answering Defendants, and any purported activities to the contrary are thus *ultra vires.*

75. Denied that any Answering Defendant has promised a legal or other result. Admitted that there have been certain legal representation(s) in lawyer-client relationships by the Lawyer Defendants as to matters irrelevant herein. Denied that the subject matter hereof is relevant to any legal representation of a co-Defendant. The activities of other Defendants are unknown to Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

76. Denied.

77. Admitted that the Montgomery Law Defendants represent the legitimate interests of timeshare owners. For example and prior to the filing of this lawsuit, the Montgomery Law Defendants filed suit against Wyndham on behalf of 33 defrauded Wyndham owners In the Circuit Court of Taney County, Missouri. In retaliation, Wyndham filed this lawsuit against the attorneys who had filed suit for the Wyndham timeshare owners. Otherwise denied. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

78. The activities of the other defendants are unknown to Answering Defendants. Such entities are not agents for the Montgomery Law Defendants, are not authorized to

perform an act in behalf of Answering Defendants, and any purported activities to the contrary are thus *ultra vires*. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

79. Denied. And, averring further that Suite 1200 is an entire floor.

80. Denied. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

81. What Wyndham has received or not received is not known to the Montgomery Law Defendants. However, it is admitted that numerous such demand letters had been sent.

82. Admitted that demand letters point-out various misrepresentations by Wyndham's representatives during the inducement and formation of the Timeshare Contracts.

83. Denied. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

84. Denied that any person or entity has ever paid the Lawyer Defendants anything for sending a demand letter to Wyndham. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

85. With over 200 aggrieved Wyndham timeshare owners, and given that an extensive research project would be needed to determine whether a Wyndham Owner has ever paid anything to the Lawyer Defendants directly, it is not presently possible to determine the truth or falsity of the pleading, and accordingly the same is presently denied, subject to

correction. But, however, the established practice is that such legal services will be contingent fee.

86. The Montgomery Law Defendants are not members of the Florida Bar, and thus are unfamiliar with such Rules, which in any event constitute a written document and thus speak for themselves.

87. Denied.

88. Denied.

89. The rights, duties and/or activities of Chudy and Tucker are unknown to Answering Defendants.

90. Denied.

91. Denied.

92. The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

93. The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

94. The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

95. The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

96. The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

97. The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

98. The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

99. Denied.

100. Admitted. [[Question: who owned the atlantvacationremdies website?]]

101. The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Moreover, the contents of a written document speak for themselves.

102. Denied.

103.        The rights, duties and/or activities of the other Defendants are unknown to
Answering Defendants. Denied as to the Answering Defendants. Moreover, the contents
of a written document speak for themselves. [[Who owns www.atlasconsultingfirm.net

104.        Admitted.

105.        The contents of a written document speak for themselves. Otherwise denied.

106.        The contents of a written document speak for themselves. Otherwise denied.

107.        The rights, duties and/or activities of the other Defendants are unknown to
Answering Defendants. Denied as to the Answering Defendants. Moreover, the contents
of a written document speak for themselves.

108.        The rights, duties and/or activities of the other Defendants are unknown to
Answering Defendants. Denied as to the Answering Defendants. Moreover, the contents
of a written document speak for themselves.

109.        The rights, duties and/or activities of the other Defendants are unknown to
Answering Defendants. Denied as to the Answering Defendants. Moreover, the contents
of a written document speak for themselves.

110.        The rights, duties and/or activities of the other Defendants are unknown to
Answering Defendants. Denied as to the Answering Defendants. Moreover, the contents
of a written document speak for themselves.

111.        The rights, duties and/or activities of the other Defendants are unknown to
Answering Defendants. Denied as to the Answering Defendants. Moreover, the contents
of a written document speak for themselves. Denied yet further – here and throughout –
that there is any such thing, entity or construct as "the TPE Defendants", which term
improperly assumes conspiratorial conduct.

12

112.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Moreover, the contents of a written document speak for themselves. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

113.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

114.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

115.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

116.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

117.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

118.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

119.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

120.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further –

here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

121.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

122.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

123.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

124.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

125.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

126.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

127.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE

Defendants", which term improperly assumes conspiratorial conduct.

128.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

129.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

130.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

131.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

132.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

133.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further –

here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

134.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

135.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

136.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

137.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

138.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

139.     No pleading is necessary to an incorporation paragraph.

140.     No pleading is necessary to an incorporation paragraph.

141.     No pleading is necessary to an incorporation paragraph.

142.     No pleading is necessary to an incorporation paragraph.

143.     The rights, duties and/or activities of the other Defendants are unknown to

Answering Defendants. Denied as to the Answering Defendants.

144.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

145.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

146.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

147.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

148.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

149.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

150.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

151.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

152.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

153.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

154.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

155.    No pleading is necessary to an incorporation paragraph.

156.    Admitted that the pleading purports to so plead, but denied as to any pertinency or application herein.

157.    Denied.

158.    Denied.

159.    Denied.

160.    Denied.

161.    Denied.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied. And yet further denied in response to the several prayers for relief contained within Plaintiffs' Complaint that the Plaintiffs are entitled to any relief herein of any kind.

167.    No response is made, inasmuch as this Count is not directed to an Answering Defendant.

168.    No response is made, inasmuch as this Count is not directed to an Answering Defendant.

169.    No response is made, inasmuch as this Count is not directed to an Answering Defendant.

170.    No response is made, inasmuch as this Count is not directed to an Answering Defendant.

171.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

172.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

173.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

174.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

175.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

176.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

177.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

178.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

179.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

180.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

181.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

182.     No response is made, inasmuch as this Count is not directed to an Answering

Defendant.

183.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

184.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

185.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

186.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

187.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

188.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

189.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

190.     No response is made, inasmuch as this Count is not directed to an Answering Defendant.

191.     No pleading is necessary to an incorporation paragraph.

192.     Admitted that the pleading purports to so plead, but denied as to any pertinency or application herein.

193.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE

Defendants", which term improperly assumes conspiratorial conduct.

194.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Denied yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

195.     Denied.

196.     Denied.

197.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring yet further – here and throughout – that there is any such thing, entity or construct as "the TPE Defendants", which term improperly assumes conspiratorial conduct.

198.     Denied.

199.     Denied.

200.     Denied.

201.     Denied.

202.     No pleading is necessary to an incorporation paragraph.

203.     Admitted that the pleading purports to so plead, but denied as to any pertinency or application herein.

204.     Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

205.     Denied.

206.     Denied.

207.     Denied.

208.    Denied.

209.    Denied.

210.    Denied.

211.    Denied.

212.    Denied.

213.    Denied.

214.    Denied.

215.    Denied.

216.    Denied.

217.    Denied.

218.    No pleading is necessary to an incorporation paragraph.

219.    Admitted that the pleading purports to so plead, but denied as to any pertinency or application herein.

220.    Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

221.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

222.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law

Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

223.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

224.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

225.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

226.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

227.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

228.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

229.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

230.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

231.    The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law

Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

232.      The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

233.      The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "the MRC Defendants and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of MRC.

234.      No pleading is necessary to an incorporation paragraph.

235.      Admitted that the pleading purports to so plead, but denied as to any pertinency or application herein.

236.      Answering Defendants are without sufficient information to admit or deny, thus the pleading is denied.

237.      The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

238.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

239.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

240.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

241.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

242.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants",

inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

243.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

244.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

245.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

246.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

247.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

248.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

249.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants. Averring further, there is no such compound or other entity as "Catalyst and Montgomery Law Defendants", inasmuch as the Montgomery Law Defendants do not participate in the business activities of Catalyst.

250.     No pleading is necessary to an incorporation paragraph.

251.     Admitted that the pleading purports to so plead, but denied as to any pertinency or application herein.

252.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

253.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

254.     The rights, duties and/or activities of the other Defendants are unknown to

Answering Defendants. Denied as to the Answering Defendants.

255.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

256.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

257.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

258.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

259.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

260.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

261.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

262.     The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

263.     No pleading is necessary to an incorporation paragraph.

264.     Admitted that the pleading purports to so plead, but denied as to any pertinency or application herein.

265.     Denied.

266.     Denied.

267.     The rights, duties and/or activities of the other Defendants are unknown to

Answering Defendants. Denied as to the Answering Defendants.

268.      The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

269.      No pleading is necessary as to the contents of a written document, whose contents speak for themselves.

270.      No pleading is necessary as to the contents of a written document, whose contents speak for themselves.

271.      The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

272.      The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

273.      The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

274.      The rights, duties and/or activities of the other Defendants are unknown to Answering Defendants. Denied as to the Answering Defendants.

In regard to Wyndham's several Prayers for Relief, denied that the Plaintiffs are entitled to any relief whatsoever.

## II. AFFIRMATIVE DEFENSES.

Without regard to which party bears the burden of proof and without waiving its right to require Plaintiffs to prove each and every element of each claim asserted in the Complaint, Defendant asserts the following affirmative defenses to the claims set forth in the Plaintiffs' Complaint.

275.     The Plaintiffs are entitled to no relief whatsoever, and whether as set forth in their several prayers for relief, or otherwise.

276.     Counts I and IV-VIII fail to state a cause of action.

277.     Counts I and IV-VIII are barred by the statute of limitations to the extent any of the actions complained of against an Answering Defendant occurred outside of specific statutes of limitations for each Count.

278.     Counts I and IV-VIII are barred by the doctrines of waiver, acquiescence, and estoppel, as much of the conduct alleged by Plaintiffs to be wrongful has been accepted and participated in by Plaintiffs for years.

279.     Counts I and IV-VIII are barred by the doctrine of laches as Plaintiffs have prejudicially delayed in bringing this action since the complained-of conduct by Answering Defendant allegedly began.

280.     Counts I and IV-VIII are barred by the *Noerr-Pennington* Doctrine. The Lawyer Defendants are lawyers and the alleged "wrongful conduct" of such Lawyer Defendants is nothing more than acts reasonably attendant to litigation and have been solely for the purpose of securing a favorable outcome for the subject clients who are Wyndham timeshare owners and to protect and advance said owners' legal rights.

281.     Counts I and IV-VIII are barred by the litigation privilege and the Lawyer Defendants' entitlement to litigation immunity in the provision of legal services.

282.     Counts I and IV-VIII are barred by the intra-corporate conspiracy doctrine as an agent acting on behalf of principals, including without limitation, certain Wyndham timeshare owners.

283.     The Plaintiffs lack standing to pursue the remedies sought in Counts I and  IV-VIII, as the causes of action do not allege a legally recognizable injury to the Plaintiffs, but appear to be derivative of alleged injuries of nonparties.

284.     Counts I and IV-VIII fail to the extent they inhibit the Defendant's First Amendment rights to petition for redress before judicial branches of the government, to provide personal legal advice to his clients in their best interests, and to provide effective representation to the Lawyer Defendant's clients to associate with the lawyer of their choosing.

285.     The Lawyer Defendants are privileged as the attorney and agent for each of the clients to act on the client's behalf.

286.     To the extent that this action is based upon the Lawyer Defendants' legal advice, the Lawyer Defendants are privileged to give it.

287.     The Plaintiffs have failed to mitigate their damages, if any, inasmuch as, for example, they can return timeshare interests to their inventory and resell them at a profit for Plaintiffs, which is in fact what they do.

288.     The Plaintiffs fail to identify the specific contracts (or relationships) with which the Answering Defendants allegedly interfered or allegedly conspired to interfere, and have moreover failed to state which timeshare properties have been returned to Wyndham's inventory for re-sale with resulting yet further profits to Wyndham.

289.     The Plaintiffs have failed to allege sufficient facts that the Answering Defendants actions have amounted to direct and intentional interference.

290.     The Plaintiffs' claims under the Lanham Act are barred, in whole or in part, by the doctrines of fair use, nominative fair use and/or descriptive use.

291.     Counts I and IV-VIII are barred, in whole or in part, because an agent is not liable for the torts of his principal and the Answering Defendants are not liable for the acts of others over whom they have had no control, as the Answering Defendants do not control Catalyst or MRC, or the principals or agents of Catalyst or MRC.

292.     The Plaintiffs' claims for equitable relief are barred, because Plaintiffs cannot show that they will suffer any irreparable harm from the Answering Defendants actions. The alleged injury or damage suffered by Plaintiffs, if any, would be adequately compensated by damages. Accordingly, Plaintiffs have a complete and adequate remedy at law and are not entitled to seek equitable relief.

293.     Counts I and IV-VIII are barred, in whole or in part, because speech of the Answering Defendants is protected by the First Amendment and the Answering Defendants have not made any of the representations with malice or in bad faith.

294.     Count I and IV-VIII are barred because the requested relief, if granted, would not be in the public interest.

295.     The Complaint fails to join an indispensable party plaintiff, as required by Rule 19 FRCP to avoid multiple litigation and/or inconsistent or multiple verdicts, and specifically Wyndham Destinations (f/k/a Wyndham Worldwide), which upon information and belief is the parent organization of one or more of the named Plaintiffs, and which bills itself as world's largest vacation ownership, exchange and rental company. https://www.wyndhamdestinations.com/about-wyndham/our-company?gclid=EAIaIQobChMIje77ldKM5AIVLSCtBh2eXQVGEAAYASABEgL n4fD_BwE&gclsrc=aw.ds

296.     The Complaint fails to join as indispensable parties the Wyndham timeshare owners whose contracts are supposedly tortiously inferred with, thus subjecting the Answering Defendants to possible multiple litigation and/or inconsistent or multiple verdicts.

297.     The Complaint falsely states that Wyndham's (albeit fraudulent) inducements to consumers to enter into timeshare contracts can only be redressed via Wyndham's supposed Ovation® program.

298.     The Answering Defendants' timeshare release services are necessary because Wyndham's supposed Ovation® program is illusory and inadequate.

299.     As a matter of law, a fraudulently induced contract may not be the subject of tortious interference.

300.     The Complaint does not state cause of action for which relief could be granted regarding allegations of false advertising, contributory false advertising, or deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices (FDUTPA), for the reasons set for in Judge Presnell's opinion in the case of *Wyndham Vacation Ownership v. Reed Hein & Associates, LLC*, which is incorporated by reference herein (See Exhibit A).

301.     Count IV for alleged "Contributory False Advertising" directed against the Lawyer Defendants fails to state a cause of action by failing to allege facts, but instead alleging only legal conclusions.

302.     Count IV for alleged "Contributory False Advertising" directed against the Lawyer Defendants does not conform to the requirements of the decision of the 11th Circuit in the seminal case of *Duty Free America, Inc. v. Estee Lauder Companies, Inc*., 797 F.3d 1248 (11th Cir. Aug. 7, 2015), which was a case of first impression and judicially created a

statutory cause of action for contributory false advertising that stands alone among the Circuits, thereby creates a conflict among the Circuits, has been widely criticized by the other Circuits, thereby inherently creates a conflict among the Circuits which only the supreme court can resolve.

303.     Count IV for alleged "Contributory False Advertising" directed against the Lawyer Defendants fails to state a cause of action, because the accused provision of legal services is too attenuated to amount to providing a product or service necessary to support the alleged false advertising, and there has been no allegation that the Lawyer Defendants have monitored or controlled the alleged underlying advertising.

304.     On August 2, 2017, when Wyndham Worldwide issued the following Press Release:

> Wyndham Worldwide (NYSE: WYN) today announced plans to spin off the company's hotel business resulting in two separate, publicly traded companies. Wyndham Hotel Group, with headquarters in Parsippany, NJ, will become a new, publicly traded pure-play hotel company with a portfolio of renowned brands. Wyndham Vacation Ownership, with headquarters in Orlando, Florida, will be the world's largest publicly traded timeshare company and will be joined with Wyndham Destination Network, home to RCI, the world's largest timeshare exchange company.

Accordingly, Wyndham had spun-off Wyndham Destinations as a timeshare-only company from Wyndham's successful hotel business, which thereby diluted the ability of Wyndham timeshare owners to rely upon or to receive maintenance of the timeshare properties that they had purchased.

305.     The Complaint fails to state claims upon which relief may be granted regarding alleged damages. Multiple Plaintiffs are treated as one allegedly aggrieved entity and they fail to define what damage each Plaintiff has suffered (if any) as a direct result of any alleged actions or omissions by an Answering Defendant.

306. The Complaint manufactures the non-existent term "TPE Defendants", and thus falsely groups together as co-Defendants for the same alleged actions or omissions under a purported "conspiracy blanket" a wide variety of different businesses having widely different and independent functions, operations and personnel.

307. The Complaint false attributes to the Answering Defendants supposed statements of MRC, Chudy, Catalyst, or Tucker and their agents and principals, who are not agents for the Answering Defendants, and thus the Answering Defendants are not bound thereby.

308. CLS, Inc., Atlas Vacation Remedies, LLC, and Donnelly Snellen are misjoined herein, inasmuch as they have never been in the timeshare release business.

309. The sole business of Principal Transfer Group, LLC  and Jason Levi Hemingway, who as a broker never takes title to any timeshare properties, is to find a willing buyer for timeshare properties and/or timeshare points by a willing timeshare owner who wants to sell the timeshare property. As such, there can be no inducement by Principal Transfer Group, LLC  and Jason Levi Hemingway to breach the timeshare contract via failure to pay maintenance fees, alleged herein to constitute tortious interference with contract, because such an action would render re-sale of the timeshare property and/or timeshare points, impossible.

310. Even, assuming *arguendo* tortious conduct by Principal Transfer Group, LLC and Jason Levi Hemingway, which is affirmatively and expressly denied, the Plaintiffs would be *in pari delicto* therewith, by participating materially and monetarily in such re-sale activities of Principal Transfer Group, LLC  and Jason Levi Hemingway.

311. Specifically, Wyndham works hand-in-glove with Principal Transfer Group, LLC to earn additional money for Wyndham. Principal Transfer Group, LLC has

accomplished dozens, if not hundreds, of transfers of the ownership interests of Wyndham timeshare owners by paying a fee of $299 to Wyndham. Even though Wyndham has sued Principal Transfer Group, LLC, Wyndham continues to accept the transfer fee of $299 from Principal Transfer Group, LLC to this date, which allows Principal Transfer Group, LLC to accomplish an exit from the timeshare contract for Wyndham owners.

312.     Plaintiffs have failed to allege or establish that they have standing to bring a Lanham Act claim against the Answering Defendants and have failed to allege facts sufficient to establish that their interests fall within the zone of interests protected under Section 1125(a), and that the injuries asserted were proximately caused by alleged Lanham Act violation(s) of the Answering Defendants.

313.     Plaintiffs Complaint fails to set-forth (i) any adequate facts regarding the who, what, why, where, when and how of any alleged false advertising statements by MRC, Chudy, Catalyst, or Tucker, together with their respective principals, sales staff consultants or other agents, and (ii) most importantly, that the Answering Defendants knew about, participated in, or approved such activities.

314.     The statute of limitations for an alleged Lanham Act violation has run, inasmuch as Plaintiffs have not defined in their Complaint the timeframe of any alleged false or misleading advertising by the Answering Defendants.

315.     Plaintiffs purport to plead tortious interference with contract, but have failed to specify any such contracts and/or the Wyndham timeshare owners who allegedly have ben interfered with.

316.     In regard to Plaintiffs' pleadings of tortious interference with contract, the accused actions taken by any Answering Defendant have been taken as agent for a party to the contract (i.e., the respective Wyndham timeshare owner), and thus the Answering Defendant are not "strangers to the contract".

317.     Plaintiffs' pleading of a "civil conspiracy" against "all defendants" fails to state a cause of action upon which relief may be granted against Principal Transfer Group, LLC and Jason Levi Hemingway, because Plaintiffs have failed to allege any independent underlying tort in support of their civil conspiracy claim against "all defendants".

318.     Plaintiffs' Complaint improperly seeks to restrain Free Speech, inasmuch as under both Florida law and Federal law, injunctions may not restrain prior or free speech. See *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 2771 (1993) [temporary restraining orders and restraints and directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns].

319.     As to the Lawyer Defendants, legal advice given to a client is protected by the litigation privilege.

320.     As to the Lawyer Defendants, legal action taken against the Plaintiffs has been approved and ratified by the aggrieved and dissatisfied Wyndham timeshare owners.

321.     As to the Lawyer Defendants, the act of sending a demand letter to Wyndham does not constitute tortious interference with contract, inasmuch as Wyndham may ignore such letter, at its option. The propriety of the Lawyer Defendants' filing of lawsuits against Plaintiffs in behalf of an aggrieved Wyndham timeshare owner must be considered only in that lawsuit, and not in this case, which is a collateral proceeding.

321. The Defendants have not engaged in any deceptive practices or unfair competition.

322. No sales have been diverted from the Plaintiffs but-for the alleged commercial activities of the Defendants; wherefore, the Plaintiffs has suffered no cognizable damages herein.

323. Plaintiffs have suffered no compensable injury.

324. Plaintiffs have failed to mitigate any such alleged damages.

325. Plaintiffs have not met the requirements for injunctive relief.

326. The Answering Defendants have acted in good faith and/or with justification.

327. Plaintiffs comes to Court with unclean hands, and thus are entitled to no relief from the Court, whether at law or at equity.

328. The Answering Defendants reserve the right to assert any other affirmative defenses during the course of this action.

### III. COUNTERCLAIMS

329. Counterclaim Plaintiff The Montgomery Law Firm, LLC is a limited liability company organized and existing under the laws of the State of Missouri with a principal place of business at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806.

330. Counterclaim Plaintiff Montgomery & Newcomb, LLC is a limited liability company organized and existing under the laws of the State of Missouri with a principal place of business at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806.

331. Counterclaim Plaintiff M. Scott Montgomery, Esq. is an individual and resident of the State of Missouri, whose office is at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806.

332. Counterclaim Plaintiff W. Todd Newcomb, Esq. is an individual and resident of the State of Missouri whose office is at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806.

333. Counterclaim Plaintiff Principal Transfer Group, LLC, is a limited liability company organized and existing under the laws of the State of Missouri with a registered address in Bolivar, Missouri 65804. Plaintiff Principal Transfer Group, LLC maintains a principal place of business at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806.

334. Counterclaim Plaintiff Jason Levi Hemingway is an individual and resident of the State of Missouri.

335. Upon information and belief, Counterclaim Defendants Wyndham Destinations, Inc. f/k/a Wyndham Worldwide Corporation and Wyndham Vacation Ownership, Inc. are corporations organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

336. Upon information and belief, Counterclaim Defendant Wyndham Vacation Resorts, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

337. Upon information and belief, Counterclaim Defendant Wyndham Resort Development Corporation is a corporation organized and existing under the laws of the State of Oregon with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

338. Upon information and belief, Counterclaim Defendant Shell Vacations LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

339. Upon information and belief, Counterclaim Defendant SVC-West, LLC is a limited liability company organized and existing under the laws of the state of California with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

340. Upon information and belief, Counterclaim Defendant SVC-Americana, LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

341. Upon information and belief, Counterclaim Defendant SVC-Hawaii, LLC is a limited liability company organized and existing under the laws of the state of Hawaii with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

SUBJECT MATTER JURISDICTION

342. These counterclaim actions arise, *inter alia*, under the Laws of the United States, including the Lanham Act. As a result, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction over the pendant state counts pursuant to 28 U.S.C. § 1367.

PERSONAL JURIDCTION AND VENUE

343. The Court has personal jurisdiction over the counter-defendants Wyndham, *inter alia*, by reason of their having filed suit herein. Venue is proper before this Court.

**Counterclaim Count 1 – (Intentional Tortious Interference with Existing Economic Relationships and With Prospective Economic Advantage)**

344.   The Counterclaim Plaintiffs incorporate herein by reference the foregoing paragraphs, as if fully set forth below.

345.   A claim for relief exists for intentional interference with another's existing and/or prospective business advantage where the tortfeasor has disrupted the business relationship of another by improper methods that fall outside the boundaries of fair competition.

346.   Wyndham alleges that the Counterclaim Plaintiffs and it are competitors. ["144….Because Wyndham Owners can be either a customer of Defendants, or a customer of Wyndham, but not both, **they are competitors**"… "158. The CLS Defendants' False and Misleading Advertisements described above were commercial speech made by a defendant <u>acting in competition to Wyndham</u> by trying to interfere with Wyndham's business relationships for the CLS Defendants' own financial gain,…"   "163. **The CLS Defendants are operating as competitors to Wyndham**. [[Doc. 1, filed 12/10/2018, ¶¶ 144, 158, 163.]]

347.   The Counterclaim Plaintiffs possess existing and prospective business relationships with clients and customers that had purchased timeshare properties or timeshare points from Wyndham ("Wyndham timeshare owners").

348.   Wyndham has sought to intimidate such clients and customers and the Counterclaim Plaintiffs from entering into contractual relationships, and to undermine existing contractual relationship by threatening suit, and by filing a multiplicity of lawsuits nationwide against other so-called "timeshare release companies" and their lawyers who represent dissatisfied and aggrieved Wyndham timeshare owners. Such law suits include, for example, and in addition to

attorneys Montgomery and Newcomb and their law firms, Wyndham has orchestrated lawsuits against attorney Ken Privett from Oklahoma; and filed suit in Wyndham v. US Consumer Attorneys, DC Capital Law Firm, et al., Case No. 9:18-cv-81251, Diamond Resorts International, Inc. et al v. US Consumer Attorneys P.A., Case No. 9:18-cv-080311-RLR, and Wyndham Vacation Ownership, Inc. et al v. Totten Franqui Davis & Burk, LLC et al, Case No. 9:18-cv-81055-DMM in the Southern District of Florida; and filed suit in Wyndham v. CLS and Attorney Mary Clapp in the Southern District of Florida; and filed suit in Wyndham Vacation Ownership, Inc. et al v. Reed Hein & Associates, LLC et al, Case No. 6:18-cv-02171-PGB-TBS in the Middle District of Florida (Orlando).

349.    Significant injurious interference has in fact occurred via Wyndham's false, misleading and libelous advertising and marketing, and in representations, statements and comments made in commerce, and the wrongful use of the laws of the United States -- all constituting wrongful conduct separate from the interference, *per se*, and falling outside the boundaries of privileged and/or fair competition. At all times, Wyndham knew of, and intended to interfere with, the present and prospective business advantage belonging to the Counterclaim Plaintiffs, and this unlawful conduct of Wyndham has caused immense damage to Counterclaim Plaintiffs.

350. More specifically, Wyndham has made statements to the trade and others , which are libelous, *per se,* and which contain false and misleading statements – all for the express purpose of the tortious misappropriation of the business properties of another based upon known falsehood, including but not limited to the following, additional examples of which will be revealed in discovery:

       a. Wyndham CEO Michael Brown stated that the challenge -- in filing Wyndham's anti-competitive lawsuits such as the present lawsuit against the Answering

Defendants -- is that exit company owners may open numerous companies with the same address and phone number, making untangling the web difficult. "When one closes down, another opens up," he said. "The companies are run by a single individual or two or three. When it's time to close down an entity, it's easy enough for an individual or group of individuals to, in effect, disappear from the landscape."

b. "We are committed to protecting our owners to ensure they aren't taken advantage of," said Michael Brown, President and CEO of Wyndham Destinations. "Through our partnership with ARDA, ARDA-ROC and regulatory and enforcement agencies, we support consumer protection legislation and law enforcement's efforts in cases like these. We encourage our owners to reach out to us or ARDA for participation in legitimate available programs in order to avoid becoming victims of timeshare exit company scams."

c. Senior litigation counsel, Bud Bennington, of the law firm Shutts & Bowen LLP, … counsel for Wyndham Destinations in the ACC matter pending in the U.S. District Court, for the Southern District of Florida, commented that "the various timeshare companies, their law firms, ARDA and ARDA-ROC have undertaken a relentless effort to arrest the nefarious and unlawful conduct of the multiple timeshare exit companies around the world and the unethical lawyers that assist them in the perpetration of their deceptive practices."

d. Wyndham's media contact Lori Ford said, "Our goal is to help owners' transition to the next phase of their life and reach as many owners as possible, before they are contacted by fraudulent companies…".

e. Wyndham's website deceptively positions (at the bottom of the page) the disclaimer, and in all capital letters to make it more difficult to read:

THIS ADVERTISING MATERIAL IS BEING USED FOR THE PURPOSE OF SOLICITING THE SALE OF TIME-SHARE PROPERTY OR INTERESTS IN TIME-SHARE PROPERTY.

and then states above:

"Beware of those who claim to work for Wyndham or the Ovation by Wyndham program. There are dozens of third-party exit companies and scams out there that don't have your best interests at heart".

Wyndham's above remarks are intended to and do constitute intentional tacit

references to the Answering Defendants herein.

f . On January 22, 2019, one Ms. Glennys Ortega Rubin, Esq. an attorney agent for Wyndham, published accusations against attorneys Montgomery and Newcomb, and individuals Hemingway and Snellen, and their various companies and law firms of criminal misconduct and ethical violations of the laws of the States of Florida and Missouri charging that such attorneys and their clients were "actively avoiding and evading service, " which conduct is punishable by fine and/or imprisonment.

[[ 843.02 Whoever shall resist, obstruct, or oppose any …person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree…" 2000 FLORIDA STATUTES, Title XLVI – Crimes, Chapter 843 – Obstructing Justice]]

[[575.1601. A person commits the offense of interference with legal process if, knowing another person is authorized by law to serve process, he or she interferes with or obstructs such person for the purpose of preventing such person from effecting the service of any process. MISSOURI REVISED STATUTES, CHAPTER 575,  OFFENSES AGAINST THE ADMINISTRATION OF JUSTICE]].

Moreover, for a lawyer to participate in the evasion of service of process is *prima facie* unethical. Service of process is a necessary component of the judicial system and a lawyer is an officer of that system. Counseling a client in ways to evade service interferes with the judicial system and is, therefore, prejudicial to the administration of justice in violation of Rule 8.4(d), <u>ABA Model Rules of Professional Conduct.</u> Second, a lawyer should not counsel a client to engage, or assist a client in conduct that the lawyer knows is fraudulent, in violation of Rule 1.2(d). Finally, advising a client to take evasive action solely for the purpose of delay is disrespectful of the rights of an opposing party in violation of Rule 4.4 which provides in part, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to…delay…a third person…."

351. Yet more specifically, Wyndham states directly or implicitly that the marketing and sales of the Counterclaim Plaintiffs services are unlawful, and further seriously implies that the

recipients thereof will also be subject to lawsuits and other harassment, if the recipients continue to do business with Counterclaim Plaintiffs.

352.    Thus, the Counterclaim Plaintiffs are entitled to injunctive relief under applicable law and compensatory and exemplary damages to the extent allowed by law.

**Counterclaim Count 2 – (Trade Libel)**

353.    Counterclaim Plaintiffs respectfully incorporate herein by reference the foregoing paragraphs, as if fully set forth below.

354.    Trade libel occurs through the publication of a false statement that intentionally disparages the quality of property or services and induces another not to deal with the libeled party, which thereby causes actual pecuniary damage. To constitute trade libel, the statement must be false, and the statement must disparage the quality of the libeled party's products or services. Publication occurs when the libeler communicates the false statements to other persons or entities, orally or in writing.

355.    As alleged above and incorporating each of Wyndham's slanderous and libelous statements herein,  Wyndham has made the false and disparaging statements to entities and individuals throughout the marketplace for timeshare properties and timeshare points, and specifically that the Counterclaim Plaintiffs are supposedly not lawfully entitled to market their timeshare release services, while all the time Wyndham has been fully aware to the contrary.

356.    The statements aforesaid of Wyndham are thus false and disparaging to Counterclaim Plaintiffs and have been made with the express and clear intent to induce others not to deal with Counterclaim Plaintiffs, and on information and belief, Wyndham has been successful in this illicit effort.

357.    Accordingly, Counterclaim Plaintiffs are entitled to recovery of damages, punitive damages and injunctive relief under applicable law.  Specifically, unless and until enjoined and restrained by order of this Court, the unlawful conduct of Wyndham will continue to cause grave and irreparable injury to Counterclaim Plaintiffs in the loss of customers, revenues and goodwill.

## Counterclaim Count 3 – (Common Law Unfair Competition)

358.    Counterclaim Plaintiffs  incorporate herein by reference the foregoing paragraphs, as if fully set forth below.

359.   The foregoing actions of Wyndham constitute unfair competition under the common law of the State of Florida.

360.   As a direct and proximate result of Wyndham's unlawful acts, Counterclaim Plaintiffs have been damaged in an amount to be determined at trial.

361.    Unless enjoined by the Court, Wyndham's unlawful acts will continue to cause irreparable damage, loss and injury to Counterclaim Plaintiffs for which they have no adequate remedy at law.

## Counterclaim Count 4 -- (Federal False Advertising under the Lanham Act)

362.    Counterclaim Plaintiffs incorporate herein by reference the foregoing paragraphs, as if fully set forth below.

363. A number of lawsuits have been filed nationally against Wyndham (i) for fraudulent misconduct, including fraudulent inducements to consumers to enter into timeshare contracts; (ii) for false advertising; and (iii) other tortious conduct --  all in regard to Wyndham's sale of timeshare properties and timeshare points.

364. In order to attempt to diminish the negative publicity generated by Wyndham's unlawful sales practices, Wyndham has initiated a purported "buy-back" program known as Ovation®.

365. Wyndham's Complaint herein states that Wyndham's fraudulent inducements to consumers to enter into timeshare contracts can only be redressed via Wyndham's supposed Ovation® program. But, however, Wyndham's supposed Ovation® program is deceptive, illusory and inadequate.

366. Wyndham's Ovation program is deceptive, illusory and inadequate, *inter alia*, because:

- Despite Wyndham's practices of selling its timeshare as an "investment" in violation of the Securities Laws of the United States, Wyndham's fraudulent Ovation® program is not a "buy-back" program, at all, but rather is a "surrender" manipulation, resulting (at best) in the loss of the timeshare purchaser's entire investment;
- Wyndham's Ovation® program will not consider for relief owners who have not paid off their mortgage or who have belonged to other timeshare clubs that were subsequently bought by Wyndham;
- Even where an owner has been considered for the program, Wyndham's fraudulent Ovation® program typically delays 6 months, in order to rack-up more maintenance fees and charges; and
- Wyndham's willingness to take back a particular property into its inequitable and deceptive Ovation® program is without objective standard and is essentially unilateral, and thus subject to Wyndham's sole subjective opinion of purported re-salability, the revenue from which will not be shared with the original timeshare owner, thereby resulting in a "double-dip" and unjust enrichment to Wyndham.

367. The Lawyer Defendants' hereof have sent more than 200 demand letters to Wyndham on behalf of aggrieved Wyndham timeshare owners, who have requested to be released from their misrepresented Wyndham contracts. Wyndham did not respond. Thus, if there were in fact a genuine buyback option, Wyndham has been provided with multiple opportunities to put it into motion. Wyndham haws never done so. As a result of Wyndham's refusal to communicate regarding its (albeit fraudulent) Ovation® program, the Lawyer Counterclaim Plaintiffs have been forced, for example, to file a lawsuit against Wyndham on behalf of approximately 36 clients in the Circuit Court of Taney County, Missouri, bearing Case Number 1846-CC00155, and also on September 19, 2018 have filed a law suit against another timeshare developer who is acting in concert with Wyndham Diamond, in the Circuit Court of Taney County, Missouri, bearing Case Number 1846-CC00179.

368. Most if not all of the Lawyer Defendants' clients have existing "mortgages" -- *i.e.*, owe substantial amounts of money to Wyndham  -- usually in the six-figure range. Wyndham's supposed Ovation® program will not buy-back (or even accept a complete uncompensated surrender of) a timeshare from Wyndham owners who owe money on it.

369. Moreover, many of the Lawyer Defendants' clients are elderly persons, and who do not have a copy of their Wyndham timeshare contract. Wyndham has been asked to provide copies of the contracts for such clients. In order to thwart any genuine possibility of a buy-back, and to conceal its false advertising and false representations, Wyndham continues to refuse.

370. In fact, on information and belief, Wyndham uses the supposed Ovation®  program together with its promises of a buy-back to extort additional illicit funds from these elderly

victims by upselling yet more Wyndham property and/or points to these hapless and oppressed Wyndham timeshare owners.

371. Clients have related horror stories, where they try to use exit programs sponsored by the resorts, pay an exorbitant "exit" fee of thousands of dollars, and still do not receive a release in the end.

372.  In marketing Wyndham's supposed Ovation® program, Wyndham has used in interstate commerce literally false and/or misleading statements, descriptions and representations with respect to the parties' respective products, in violation of 15 U.S.C. § 1125(a).

373.  Wyndham has made the false and/or misleading statements, descriptions and representations for the purpose of misleading, consumers and others, as alleged, *supra.*

374. In addition, Wyndham has advertised its supposed Ovation®  program while wrongfully claiming, orally and in print materials that Counterclaim Plaintiffs do not have the lawful right to market their lawful service, and with the direct implication and intent that those who purchase the Counterclaim Plaintiffs' competing timeshare release services will also be sued by Wyndham -- all the while when Wyndham indisputably knows that its assertions are false and/or misleading. Despite repeated demands, Wyndham willfully refuses to cease from this yet further unlawful course of conduct, to the continuing and extreme detriment of Counterclaim Plaintiffs and the Public.

375.  Wyndham's false and/or misleading statements, descriptions and representations are material, in that they are likely to influence the purchasing decisions of consumers of timeshare services and/or products.

376.  Wyndham's misconduct has been willful and wanton.

377.   As a direct and proximate result of Wyndham's unlawful acts, Counterclaim Plaintiffs have been damaged in an amount to be determined at trial.

378.   Unless enjoined by the Court, Wyndham's unlawful acts will continue to cause irreparable damage, loss and injury to Counterclaim Plaintiffs, for which they have no adequate remedy at law.

**JURY DEMAND**

379. The Counterclaim Plaintiffs demand a trial by jury of all issues so triable.

**PRAYER FOR RELIEF**

Wherefore, it is prayed:

a. That Wyndham, take nothing by reason of its Complaint and that judgment be rendered in favor of the Answering Defendants/Counterclaim Plaintiffs;

b. That the Court deny to Wyndham the injunctive relief and the monetary relief it has requested;

c. That this case be declared an "exceptional case" under the Lanham Act, and that the Answering Defendants/Counterclaim Plaintiffs be awarded their reasonable attorney's fees incurred in defense of this action and in prosecution of their Counterclaims;

d. That the Answering Defendants/Counterclaim Plaintiffs be awarded all appropriate compensatory and exemplary damages, including "increased damages" under the Lanham Act, and in such amounts to fully and fairly compensate for their injuries;

e. That the Answering Defendants/Counterclaim Plaintiffs be awarded all appropriate injunctive relief and monetary relief, including reasonable attorney's fees against the unlawful acts of Wyndham;

f.  That the Court grant such other and additional relief to the Answering Defendants/Counterclaim Plaintiffs as the Court deems just.

Respectfully submitted this 19th day of August, 2019,

**/s/ Robert M. Ward**                          Coleman W. Watson
Robert M. Ward                                 The Plaza
(Admitted *Pro Haec Vice*)                     189 S. Orange Avenue, Suite 810
3455 Peachtree Road NE, Floor 5                Orlando, FL 32801
Atlanta, GA 30326                              Telephone: (404) 474-0592
Telephone: (404) 606-6480                      Facsimile: (404) 965-3750
Facsimile: (404)606-6480                       coleman@watsonllp.com
rward@bmwiplaw.com                             *Attorneys for Some of the Defendants*

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing was filed on the date set forth hereon electronically via CM/ECF in the United States District Court for the Middle District of Florida, with notice and copy of same being electronically served by the Court upon all counsel of record.

**/s/ Robert M. Ward**

*Attorney for Some of the Defendants*