UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WYNDHAM VACATION OWNERSHIP,
INC., WYNDHAM VACATION
RESORTS, INC., WYNDHAM RESORT
DEVELOPMENT CORPORATION,
SHELL VACATIONS, LLC, SVC-WEST,
LLC, SVC-AMERICANA, LLC and SVC-
HAWAII, LLC,

    Plaintiffs,

v.                                                          Case No: 8:19-cv-1895-T-36CPT

THE MONTGOMERY LAW FIRM, LLC,
MONTGOMERY & NEWCOMB, LLC, M.
SCOTT MONTGOMERY, ESQ., W.
TODD NEWCOMB, ESQ., CLS, INC.,
ATLAS VACATION REMEDIES, LLC,
PRINCIPAL TRANSFER GROUP, LLC,
DONNELLY SNELLEN, JASON LEVI
HEMINGWAY, MUTUAL RELEASE
CORPORATION, DAN CHUDY,
MATTHEW TUCKER and CATALYST
CONSULTING FIRM LLC,

    Defendants.
_____/

## **O R D E R**

This matter comes before the Court upon the Plaintiffs' Motion to Strike Defendants' Affirmative Defenses and Incorporated Memorandum of Law (Doc. 166), Defendants' Brief in Opposition to Wyndham's Motion to Strike Affirmative Defenses (Doc. 173), Plaintiffs' Reply in Support of Motion to Strike Affirmative Defenses (Doc. 177), Plaintiffs' Motion to Dismiss Defendants' Counterclaims and Incorporated Memorandum of Law (Doc. 167), and Counterclaimants' Brief in Opposition to Wyndham's Motion to Dismiss Counterclaims (Doc. 172). In the motion to strike, Plaintiffs argue that Defendants' affirmative defenses must be

stricken because they are improper for a variety of reasons. Doc. 166. In the motion to dismiss, Plaintiffs argue that Defendants' counterclaims must be dismissed because they are barred by the litigation privilege, constitute a shotgun pleading, and fail to state a claim. Doc. 167. The Court, having considered the motion and being fully advised in the premises, will grant Plaintiffs' motions and give Defendants leave to file amended affirmative defenses and counterclaims.

I.   **FACTUAL BACKGROUND**[1]

Plaintiffs, Wyndham Vacation Ownership, Inc.; Wyndham Vacation Resorts, Inc.; Wyndham Resort Development Corporation; Shell Vacations, LLC; SVC-West, LLC; SVC-Americana, LLC; and SVC-Hawaii, LLC (collectively "Plaintiffs"), filed this action against numerous Defendants, including The Montgomery Law Firm, LLC; Montgomery & Newcomb, LLC; M. Scott Montgomery, Esq.; W. Todd Newcomb, Esq.; CLS, Inc. d/b/a Atlas Vacation Remedies and d/b/a Principal Transfer Group; Atlas Vacation Remedies, LLC; Principal Transfer Group, LLC; Donnelly Snellen; Jason Levi Hemingway; Mutual Release Corporation a/k/a 417 MRC LLC; Dan Chudy; Matthew Tucker, and Catalyst Consulting Firm, LLC (collectively, "Defendants"). Doc. 1. The instant motions concern Defendants' Consolidated Answers, Affirmative Defenses and Counterclaims (Doc. 149) filed by Atlas Vacation Remedies, LLC; Jason Hemingway; Principal Transfer Group, LLC; Donnelly Snellen; CLS, Inc.; W. Todd Newcomb, Esq.; M. Scott, Montgomery, Esq., The Montgomery Law Firm, LLC , and Montgomery & Newcomb, LLC. In the Complaint, Plaintiffs referred to Atlas Vacation Remedies, LLC, Hemingway; Principal Transfer Group, LLC; Snellen; and CLS, Inc. as "the CLS

---

[1] The following statement of facts is derived from the Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Defendants." Doc. 1 at 1. Plaintiffs referred to The Montgomery Law Firm, LLC; Montgomery & Newcomb, LLC; M. Scott Montgomery, Esq.; and W. Todd Newcomb, Esq. as "the Montgomery Law Defendants." *Id.*

Plaintiff Wyndham Vacation Ownership, Inc. ("Wyndham Vacation") is the parent company, or ultimate parent company, of Plaintiffs Wyndham Vacation Resorts, Inc. ("Wyndham Resorts"), Wyndham Resort Development Corporation ("Wyndham Development"), and Shell Vacations LLC ("Shell"). *Id.* ¶ 58. Wyndham Resorts, Wyndham Development, and Shell enter into timeshare contracts with consumers ("Owners"). *Id.* ¶ 59. When Owners purchase timeshares, they execute contracts in which the Owners agree to pay a certain amount to cover their interest, maintenance, and annual fees, and also agree to pay their share of the property taxes. *Id.* Owners often obtain loans for their timeshare and execute a note and mortgage, which documents are incorporated into the timeshare purchase agreement and are part of the contract. *Id.*

Plaintiffs allege that the Montgomery Law Defendants used who they refer to as "the TPE Defendants"—Catalyst Consulting Firm LLC, the CLS Defendants, Mutual Release Corporation, and Tucker—to carry out schemes. Doc. 1 ¶ 33. Additionally, Plaintiffs allege that the CLS Defendants are a group of companies, fictitious names, and individuals who work together as a timeshare exit company. *Id.* ¶ 38. A "timeshare exit" industry recently sprouted, which Plaintiffs allege "target[s] the timeshare industry" and induces timeshare owners to breach their contracts. *Id.* ¶ 6.

Plaintiffs' allege Defendants "instruct, deceive, induce, or persuade" the Owners to stop making their timeshare payments, ensuring the timeshare owners go into default and their interest in the properties is foreclosed. *Id.* ¶¶ 13-22. To implement this scheme, Plaintiffs allege that Defendants use false and misleading advertising to induce Owners to breach their timeshare contracts. *Id.* ¶¶ 6-21, 92-138. Defendants guarantee successful exit from their timeshare contracts but do not advise the

Owners of the consequences of ceasing payments, i.e. default and foreclosure. *Id.* 9-22. Although the Defendants play different roles in the described scheme, Plaintiffs allege that their conduct is intertwined.

The CLS Defendants, MRC Defendants, and Catalyst use various advertising methods, including online, telemarketing, direct mailing, and in-person sales presentations, to target and solicit Plaintiffs' timeshare owners to use their timeshare exit services. *Id.* ¶¶ 92-138. Those advertisements state that the CLS Defendants, MRC Defendants, or Catalyst retain lawyers to aid in canceling the timeshare contracts, and the Montgomery Law Defendants fill that role. *Id.* ¶¶ 75–78. The CLS Defendants, MRC Defendants, and Catalyst, then refer clients to the Montgomery Law Defendants, who are aware of the advertisements and send demand letters on behalf of the Owners to Plaintiffs. *Id.* ¶¶ 75-82. After sending the demand letters, Defendants take almost no further action, hoping that the threat of litigation will convince Plaintiffs to cancel or release the timeshare owners from their contracts. *Id.* ¶ 83.

Based on Defendants' alleged harm to Plaintiffs' businesses and relationships with timeshare owners, Plaintiffs filed the Complaint in this action seeking damages and injunctive relief. *Id.* 22-24. Plaintiffs bring claims for: (1) false and misleading advertising and contributory advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1); (2) tortious interference with contractual relations; (3) civil conspiracy; and (4) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA"). *Id.* ¶¶ 155-274.

After the Complaint was filed, several Defendants moved to dismiss the action for lack of personal jurisdiction or, alternatively, to transfer the venue to the United States District Court for the Western District of Missouri. Doc. 31. As part of the Motion to Dismiss, Defendants alleged that Plaintiffs failed to state a claim for tortious interference because Plaintiffs did not identify Owners who were purportedly induced to terminate their contract with Plaintiffs. *Id.* at 10-11. In ruling that the Complaint states a claim for tortious interference, the Court concluded that Plaintiffs need not identify

4

individual Owners at this stage of the proceeding. Doc. 144 at 9. The Court ultimately ruled that personal jurisdiction exists, and transfer to Missouri was not appropriate, but *sua sponte* transferred the action to this division from the Orlando Division of the United States District Court for the Middle District of Florida. *Id.* at 16-22.

After the transfer, Defendants Atlas Vacation Remedies, LLC; Hemingway; Principal Transfer Group, LLC; Snellen; CLS, Inc.; Newcomb; Montgomery; The Montgomery Law Firm, LLC; and Montgomery & Newcomb, LLC filed Defendants' Consolidated Answers, Affirmative Defenses and Counterclaims ("Answer") that Plaintiffs now seek to strike and dismiss. Doc. 149. In the Answer, Defendants include approximately fifty-three paragraphs of affirmative defenses. *Id.* ¶¶ 275-328. Defendants also raise four counterclaims. *Id.* ¶¶ 329-379. The first counterclaim is a claim for tortious interference with existing and prospective business relationships, the second is for trade libel, the third is for common law unfair competition, and the final counterclaim is for false advertising under the Lanham Act. *Id.* ¶¶ 344-379.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court,

however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that, upon motion, the court may order stricken from a pleading an insufficient defense or an immaterial matter. District courts have broad discretion in ruling on a motion to strike. *OMS Nat'l Ins. Co. v. Turbyfill*, No. 3:14cv622/MCR/CJK, 2015 WL 11109377, at *1 (N.D. Fla. July 22, 2015). However, a court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. *Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla.1978); *Bazal v. Belford Trucking Co.*, 442 F. Supp. 1089, 1101 (S.D. Fla.1977); *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir.1962).

## III. DISCUSSION

### A. Affirmative Defenses

"An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.' " *Ayers v. Consol. Const. Servs. of SW Fla., Inc.*, 207CV123FTM29DNF, 2007 WL 4181910, at *1 (M.D. Fla. Nov. 26, 2007) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir.2003)). Should a defendant "mislabel[] a denial as an affirmative defense, the proper remedy is not to strike the claim, but rather to treat it as a specific denial." *Berman v. Kafka*, No. 3:13-cv-1109-J-JBT, 2014 WL 12616999, at *1 (M.D. Fla. May 5, 2014) (quoting *Grovenor House, L.L.C. v. E.I. Du Pont De Nemours & Co.*, No. 09-21698-Civ., 2010 WL 3212066, at *3 (S.D. Fla. Aug. 12, 2010)).

"An affirmative defense will only be stricken if the defense is insufficient as a matter of law . . . ." *OMS Nat'l Ins. Co.*, 2015 WL 11109377, at *1 (quoting *Beaulieu v. Bd. of Trs. of Univ. of W. Fla.*, No. 3:07cv30, 2007 WL 2900332, at *5 n.7 (N.D. Fla. Oct. 2, 2007)). The Federal Rules of Civil Procedure do not require a defendant to support affirmative defenses with elaborate factual detail and require only that the defense give fair notice of the nature of the defense to the plaintiff. *Berman*, 2014 WL 12616999, at *2. Bare-bones, conclusory allegations, however, are insufficient to support an affirmative defense. *Niagara Distributors, Inc. v. N. Ins. Co. of N.Y.*, 10-61113-CIV, 2011 WL 13096637, at *1 (S.D. Fla. Apr. 11, 2011) (citing *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla. 2002)). Instead, an affirmative defense is sufficient if it is supported by "relevant and substantial legal and factual questions . . . ." *Id.*

"[M]otions to strike affirmative defenses are not favored by the federal courts because of their somewhat dilatory and often harassing character that merely amass unnecessary costs." *Gamez v. ACE Am. Ins. Co.*, 11-22842-CIV, 2011 WL 13115473, at *1 (S.D. Fla. Dec. 2, 2011) (citing 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1381; *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1052 (5th Cir. 1982)). Nonetheless, the Court finds that it is appropriate in this case to strike Defendants' affirmative defenses, without prejudice to Defendants filing amended affirmative defenses that comply with this Court's rules.

Despite the low pleading standard for affirmative defenses, Defendants' pleading is simply too confusing and unorganized to allow Plaintiffs or the Court to discern what affirmative defenses are being raised. For example, there are certain paragraphs in which it is not apparent whether the allegations are intended as factual support for unidentified affirmative defenses, or seek to assert

an independent defense, or general commentary on Defendants' opinion of the Complaint. *See* Doc. 149 ¶¶ 304, 306. Other defenses seem to be redundant. *See id.* ¶¶ 285-286. A number of the purported defenses are, in reality, simply denials, further complicating matters. *See*, *e.g.* 275-76, 288-89, 297, 300-303, 305. The Court will not attempt to untangle the jumbled allegations contained in Defendants' purported affirmative defenses.[2] Accordingly, they are stricken and Defendants are granted leave to file amended affirmative defenses that comply with the Federal Rules of Civil Procedure.

### B.     Shotgun Pleading

Plaintiffs argue that the counterclaims must be dismissed because they constitute a shotgun pleading that incorporates all prior paragraphs into each count. Doc. 167 at 6-7. The Court agrees.

"A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x. 274, 277 (11th Cir. 2008) (internal citation omitted). The Eleventh Circuit has identified four general types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). Relevant here, a complaint that contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" constitutes a shotgun pleading. *Id.* at 1322. Additionally, a complaint which asserts

---

[2] To the extent that Plaintiffs seek to strike Defendants' affirmative defenses that claim a litigation privilege because such defenses have been rejected by other courts, such a request is improper for a motion to strike. *Smith v. Wal-Mart Stores, Inc.*, No. 1:11-cv-226-MP-GRJ, 2012 WL 2377840 (N.D. Fla. June 25, 2012) (stating that "in ruling upon a motion to strike it is not appropriate for the Court to consider the merits of any affirmative defense because the Court accepts all well-pled facts as true and only evaluates the legal sufficiency of an affirmative defense."). Indeed, the case cited by Plaintiffs was resolved on summary judgment. *Westgate Resorts, Ltd. v. Sussman*, 387 F. Supp. 3d 1318 (M.D. Fla. 2019). The Court will not address the merits of Defendants' affirmative defenses through a motion to strike.

"multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," constitutes a shotgun pleading. *Id.* at 1323.

Not only does each count of the counterclaims incorporate the prior count, the counts also incorporate the affirmative defenses and answer. Because of this, the Court cannot determine what allegations are pertinent to what count, and what actions are purported to have been taken by the Plaintiffs to support Defendants' allegations as to each count. Accordingly, the counterclaims are dismissed without prejudice to Defendants filing amended counterclaims. Additionally, although the counterclaims must be dismissed on the basis that they constitute a shotgun pleading, the Court will address the merits of the claims to provide guidance to Defendants should they elect to file amended counterclaims.

### C. Tortious Interference

To state a claim for tortious interference with a business relationship in Florida, the plaintiff must allege: "(1) the existence of a business relationship, (2) the defendant's knowledge of that relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the breach of the relationship." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999). The business relationship element "requires a relationship with a particular party, and not just a relationship with the general business community." *Id.* The Eleventh Circuit has previously affirmed dismissal of a complaint where the plaintiffs alleged that the defendant's actions prevented them from "sell[ing] their labor to the general community," and not to a specific entity. *Id.*

Plaintiffs argue that this claim should be dismissed because Defendants have not identified individual Owners, but allege only that Plaintiffs are or have interfered with a pool of customers.

Doc. 167 at 8. As the Court determined in its Transfer Order, it is unnecessary at this stage of the proceeding to identify specific individuals. Doc. 144 at 9. Nonetheless, the Court agrees that Defendants' allegations as to this count are insufficient. In the Complaint, Plaintiffs specifically allege that Defendants "successfully solicited Wyndham Owners and caused or induced them to breach and/or terminate their contractual relationships with Plaintiffs," and that Defendants "intentionally procured the breach of Wyndham's contractual relationships by soliciting identifiable Wyndham Owners . . . ." Doc. 1 ¶¶ 206-207. Additionally, Plaintiffs further explain that "[t]he specific Wyndham Owners and Timeshare Contracts are identifiable," but attaching relevant documents identifying the Owners to the Complaint was impractical given the length of the documents. *Id.* ¶ 207 n.3.

In their counterclaim for tortious interference, Defendants do not provide the same specificity. Instead, Defendants assert that they "possess existing and prospective business relationships with clients and customers that had purchased timeshare properties or timeshare points from Wyndham . . . ." Doc. 149 ¶ 347. Defendants provide no further specificity. These vague allegations do no more than identify a business community and are insufficient to support a claim for tortious interference with a business relationship. Accordingly, Defendants' counterclaim for tortious interference is due to be dismissed on this basis.

### D.   Trade Libel

To state a claim for trade libel,

> [A] plaintiff must allege: (1) a falsehood; (2) that has been published or communicated to a third person; (3) when a defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with plaintiff; (4) the falsehood actually plays a material and substantial part in inducing others not to deal with plaintiff; and (5) special damages proximately result of the published falsehood . . . .

*Diamond Resorts Int'l, Inc. v. Aaronson*, 617CV1394ORL37DCI, 2018 WL 735627, at *8 (M.D. Fla. Jan. 26, 2018). A heightened pleading standard applies to the element of special damages, which must be specifically stated. *Id.* This requires a plaintiff to allege more than general pecuniary harm and instead plead "a pecuniary loss that has been realized or liquidated, such as lost sales." *Id.* (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999); *Collier Cty. Publ'g, Co. v. Chapman*, 318 So. 2d 492, 495 (Fla. 2d DCA 1975)). "However, Rule 9(g) requires no more than a specific statement that allows a defendant to prepare a responsive pleading and begin its defense." *ThermoLife Int'l LLC v. Vital Pharm. Inc.*, 19-CV-61380, 2020 WL 409594, at *2 (S.D. Fla. Jan. 24, 2020).

Here, Defendants allege only that they "are entitled to recovery of damages, punitive damages and injunctive relief under applicable law." Doc. 149 ¶ 357. This is insufficient to meet the pleading standard to allege trade libel and this count is due to be dismissed on this basis.

### E.     Unfair Competition

"To a state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007). "To state claim for unfair competition, the pleading party must allege that it competes with its opponent for a common pool of customers." *Id.* (citing *Home Design Servs., Inc. v. Park Square Enters., Inc.*, 2005 WL 1027370, *13–14 (M.D.Fla.2005).

Defendants' counterclaim does not state a claim for unfair competition. The counterclaim states only that "[t]he foregoing actions of Wyndham constitute unfair competition under the common law of the State of Florida," that, as a result, Defendants were damaged in an amount to be determined at trial, and that the unlawful acts will continue to cause irreparable damage and

injury to Defendants. Doc. 149 ¶¶ 358-361. However, there is no factual section of Defendants' counterclaims, and all previous paragraphs of the Answer, including affirmative defenses and prior counterclaims, are incorporated, making it impossible to discern what the alleged "foregoing actions" that support Defendants' claims could be. Accordingly, this claim is due to be dismissed.

### F. False Advertising

In their final counterclaim, Defendants allege a claim for false advertising under the Lanham Act. Doc. 149 ¶¶ 362-378. In this claim, Defendants allege that Plaintiffs have a program, known as Ovation, which is intended for Owners unhappy with their timeshare contract. *Id.* ¶¶ 365-65. Defendants state that this program is deceptive, illusory, and inadequate because it is a program for surrender of the timeshare investment, not a buy-back, certain Owners do not qualify or are not considered by Plaintiffs, and there is a delay under the Ovation program. *Id.* ¶ 366.

To state a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), the claimant must allege:

> (1) the advertisements of the opposing party are false or misleading as to the party's own product of another's; (2) the advertisements actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by casually related declining sales or loss of goodwill.

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007) (citing *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260-61 (11th Cir.2004)). "Section 1125(a) of the Lanham Act 'extends only to plaintiffs whose interests fall within the zone of interests protected' by the Lanham Act." *Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*, 618CV1088ORL31DCI, 2018 WL 5279156, at *9 (M.D. Fla. Oct. 24, 2018) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1377 (2014)). To fall within the

zone of interests, a claimant must allege an injury to its sales or business reputation that was proximately caused by the defendant's misrepresentations. *Id.* (citing *Lexmark*, 134 S. Ct. at 1395).

Here, Defendants' allegations are too jumbled to discern what false statements were purportedly made by Plaintiffs, partially because of the incorporation of the entire Answer into the claim. Although Defendants allege that Plaintiffs' Ovation program does not accomplish the sought-after goal, Defendants do not state that Plaintiffs made representations about the program that were false. Accordingly, this claim must be dismissed.

### G. Litigation Privilege

Plaintiffs also seek to dismiss Defendants' state law counterclaims for tortious interference with a business relationship, trade libel, and unfair competition based on the litigation privilege. Doc. 167 at 4-6. The Florida Supreme Court recognizes a litigation privilege, which affords absolute immunity to acts occurring during the course of a judicial proceeding as long as the act has some relation to the proceeding. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So.2d 606 (Fla. 1994)).

"[T]he litigation privilege is an affirmative defense, and therefore, 'should ordinarily be asserted in a responsive pleading and considered after the facts are developed on summary judgment or at trial.' " *Mansoorian v. Brock & Scott, PLLC*, 8:18-CV-1876-T-33TGW, 2018 WL 6413484, at *6 (M.D. Fla. Dec. 6, 2018) (quoting *Gills v. Armfield*, No. 8:10-CV-895-T-27TBM, 2011 WL 13175840, at *4 (M.D. Fla. Mar. 30, 2011)). The affirmative defense of the litigation privilege may be considered at the motion to dismiss stage, however, where " 'the complaint

affirmatively and clearly shows the conclusive applicability' of the privilege." *Id.* (quoting *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1277 (11th Cir. 2004)).

To the extent that Defendants' counterclaims are based on the filing of lawsuits, the Court agrees that the litigation privilege bars such claims. *Pace v. Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n*, 224 So. 3d 342, 345 (Fla. 5th DCA 2017) ("In the context of a tortious interference with business relationships claim, the act of filing the complaint is subject to absolute immunity under the litigation privilege."). However, it is not apparent that Defendants' claims are based exclusively on the lawsuits. Instead, Defendants also include allegations regarding statements alleged to have been made by Plaintiffs to support their claims. Doc. 149 ¶ 359 (basing Defendants' counterclaim in part on various statements allegedly made by Plaintiffs). Therefore, at this stage, the Court cannot determine conclusively whether the litigation privilege applies. Accordingly, the Court will deny Plaintiffs' request to dismiss these claims with prejudice on the basis of the litigation privilege. Accordingly, it is

**ORDERED**:

1. Plaintiffs' Motion to Strike Defendants' Affirmative Defenses and Incorporated Memorandum of Law (Doc. 166) is **GRANTED.** Defendants' Affirmative Defenses are **STRICKEN**. Defendants are granted leave to file amended affirmative defenses that cure the deficiencies noted in this Order and comply with the Federal Rules of Civil Procedure within **FOURTEEN (14) DAYS** of the date of this Order. Failure to file amended affirmative defenses within the time provided will result in this case proceeding without assertion of any affirmative defenses by Defendants.

2. Plaintiffs' Motion to Dismiss Defendants' Counterclaims and Incorporated Memorandum of Law (Doc. 167) is **GRANTED.** Defendants' Counterclaims are **DISMISSED**

without prejudice.  Defendants are granted leave to file amended counterclaims that cure the deficiencies noted in this Order within **FOURTEEN (14) DAYS** of the date of this Order. Failure to file amended counterclaims within the time provided will result in this case proceeding without counterclaims.

      **DONE AND ORDERED** in Tampa, Florida on May 5, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any