1

                    UNITED STATES OF AMERICA
                 UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA

                         -   -   -

              HONORABLE CHARLENE EDWARDS HONEYWELL
               UNITED STATES DISTRICT JUDGE PRESIDING
                  CASE NO. 8:19-CV-1895-T-36CPT

WYNDHAM VACATION OWNERSHIP, INC.;          )
WYNDHAM VACATION RESORTS, INC.; WYNDHAM,   )
RESORT DEVELOPMENT CORPORATION; SHELL      )
VACATIONS, LLC; SVC-WEST, LLC;             )
SVC-AMERICANA,LLC, and SVC-HAWAII,LLC,     )
                                           )
                        PLAINTIFFS,        )
                                           )
            VS.                            )
                                           )
THE MONTGOMERY LAW FIRM, LLC; MONTGOMERY & )
NEWCOMB, LLC; M. SCOTT MONTGOMERY, ESQ.;   )
W. TODD NEWCOMB, ESQ.; CLS, INC.; ATLAS    )
VACATION REMEDIES, LLC; PRINCIPAL TRANSFER )
GROUP, LLC; DONNELLY SNELLEN; JASON LEVI   )
HEMINGWAY; MUTUAL RELEASE CORPORATION;     )
DAN CHUDY; MATTHEW TUCKER and CATALYST     )
CONSULTING FIRM, LLC,                      )
                                           )
                        DEFENDANTS.        )

                    MOTION HEARING
            **Held Via Zoom Video Conferencing **

               REPORTER'S TRANSCRIPT OF PROCEEDINGS
                      FEBRUARY 10, 2021
                       TAMPA, FLORIDA

SHARON A. MILLER, CSR, RPR, CRR,FCRR
IL CSR 084-2617
FEDERAL OFFICIAL COURT REPORTER
801 N. FLORIDA AVENUE, SUITE 13A
TAMPA, FLORIDA 33602

Proceedings recorded by mechanical stenography,
transcript produced by computer-aided transcription

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    APPEARANCES OF COUNSEL:

2    ON BEHALF OF PLAINTIFFS:

3            SCHUTTS & BOWEN, LLP
             BY:  MR. ERIC C. CHRISTU
4                MR. JONATHAN PHILLIP HART
             525 Okeechobee Blvd. Suite 1100
5            West Palm Beach, FL  33401
             (407)835-6755
6

7            SCHUTTS & BOWEN, LLP
             BY MS. GLENNYS ORTEGA RUBIN
8            300 S. Orange Avenue, Suite 1600
             Orlando, FL  32801
9            (407) 835-6755

10

11

12   ON BEHALF OF DEFENDANTS
     Montgomery Law Firm, Montgomery LLC, Scott Montgomery and
13   Todd Newcomb

14

15           WAUGH LAW, P.A.
             BY:  MR. CHRISTIAN W. WAUGH
             321 N. Crystal Lake Drive, Suite 207
16           Orlando, Florida 32803
             (321) 800-6008
17

18   ON BEHALF OF THE DEFENDANT:
     Dan Chudy
19
             LAW OFFICES OF DAVID A. WILSON
20           BY:  MR. DAVID ANTHONY WILSON
             201 SW 2nd Street, Suite 101
21           Ocala, FL  34471
             (352)629-4466
22

23

24

25

     UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1                    TAMPA, FLORIDA; FEBRUARY 10, 2021

2                              -   -   -

3                 (COURT IN SESSION AT 1:16 P.M.)

4          THE COURT:  Good afternoon.

5          MR. WAUGH:  Good afternoon, Your Honor.

6          MR. CHRISTU:  Good afternoon, Your Honor.

7          THE COURT:  We are here in Wyndham Vacation

8    Ownership, et al., versus The Montgomery Law Firm, et al.,

9    case 8:19-cv-1895.  Counsel, please identify yourselves

10   for the Court starting first with Counsel for the

11   Plaintiffs.

12         MR. CHRISTU:  Good afternoon, Your Honor.  Eric

13   Christu for the Bowen Law Firm for the Wyndham Plaintiffs.

14   Here in my conference room with me is my partner Jonathan

15   Hart.

16         THE COURT:  All right.

17         MR. CHRISTU:  Good afternoon.

18         THE COURT:  Good afternoon.

19         MS. RUBIN:  In addition Glennys Rubin with Shutts

20   & Bowen for Plaintiff.

21         THE COURT:  Counsel for Defendants?

22         MR. WAUGH:  Your Honor, good afternoon.  Christian

23   Waugh from Waugh Law, PA on behalf of the Montgomery Law

24   Defendants which includes Montgomery Law Firm, Montgomery

25   LLC, Scott Montgomery and Todd Newcomb.

1          THE COURT:  Okay.

2          MR. WILSON:  Good afternoon, Judge.  David Wilson

3    on behalf of Dan Chudy.

4          THE COURT:  All right.  I have noticed for hearing

5    several motions this afternoon.  I have a motion for

6    summary judgment as to Count IV, a motion to strike and a

7    motion to dismiss the Montgomery Defendants, amended

8    counterclaims and to strike certain of the Montgomery

9    Defendants' Amended Affirmative Defenses.

10         Let's start first with the one that I think will

11   take the least amount of time and I can most easily

12   dispose of it, and that's the motion for summary judgment

13   as to Count IV, Doc. 29 -- 295.  You may proceed.

14         MR. WAUGH:  Thank you, Your Honor.  I mean first

15   of all, I completely agree with the Court's representation

16   about this motion.  I think it's pretty clear.  I'm not

17   contending at all that this Court does not have mandatory

18   authority under the Eleventh Circuit Court of Appeals on

19   how to dispose of that, but what I wanted to get in front

20   of the Court, Court's attention in this motion is that

21   there are other Federal courts in the United States that

22   are finding that this cause of action does not exist.

23   Clearly the Eleventh Circuit says it does, but what's

24   emerging in this country is a conflict, and what I'm

25   suggesting to the Court is that given that my clients are

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    being sued for a cause of action that really might not

2    exist so far as it hasn't been settled by the Supreme

3    Court but that there is an emerging circuit split, I was

4    asking for essentially the Court's discretion on possibly

5    certifying this back up to the Eleventh Circuit as an

6    immediate appeal under 12 U.S.C. Section 1292(b), and I

7    really think that's all there is to say about it, Your

8    Honor.

9         I really don't want to, in full duty of candor to

10   the Court, I'm not trying to hide the ball.  There is

11   dispositive law on this.

12   THE COURT:  Dispositive law in Duty Free America's

13   Inc. versus Estee Lauder Companies at 797 F.3d 1248,

14   Eleventh Circuit decision from 2015 which is binding on

15   this Court.  Would you agree?

16   MR. WAUGH:  I do, Your Honor.

17   THE COURT:  Okay.  Then let me hear from opposing

18   Counsel with regard to the motion, and more importantly

19   since Counsel has acknowledged that there is binding law

20   in the Eleventh Circuit that this Court is bound by, you

21   should spend most of your time addressing whether this

22   matter should be certified for an immediate interlocutory

23   appeal.

24   MR. CHRISTU:  Yes, Your Honor.  It sounds like a

25   concession on the summary judgment and still we are faced

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    with the motion.  We responded to it.  It was a little bit

2    awkward responding to a motion where it was kind of

3    conceded that they were wrong, but it sounds like that

4    concession has been made official today, so I'll just say

5    I'd agree with Mr. Waugh, recognizing that summary

6    judgment would be inappropriate from -- you know, in that

7    vein.

8           So on certification, Judge, I think, first of all,

9    we would disagree with the representation of the emerging

10   case law.  We cited a number of cases, Your Honor, in our

11   papers showing that, you know, courts all over the country

12   and certainly in this district and in Florida within the

13   Eleventh Circuit have been following the Eleventh's lead

14   in terms of that, so I don't see certification as being a

15   proper option here, Your Honor.

16          We cited three cases in our response, probably the

17   most significant one I think, Judge, is Judge Dalton's

18   opinion in the Pizza Hut case.  What Judge Dalton said

19   there was where the jurisdiction where the order has come

20   from has already decided the issue, there cannot be a

21   substantial ground for difference of opinion, which is one

22   of the prongs necessary for Your Honor even to entertain

23   certification, and I believe that that frankly has also

24   been conceded by opposing Counsel.  How can you really say

25   there's a substantial ground for difference of opinion

1    when they now today concede that there's a clear holding

2    of an Appellate Court directly above?  So the same

3    infirmity, Your Honor, that exists in the summary judgment

4    exists in the certification.

5            Even for the possibility of moving forward, you

6    would need satisfaction of the three prongs, and certainly

7    prong number two is not met.

8            Judge, very briefly on prong three, I would submit

9    that prong three isn't met either in the sense that an

10   immediate appeal will materially advance the ultimate

11   determination of the case.  That's not the case here, Your

12   Honor.  There's lots of other parties and claims that are

13   going to proceed, several of them along the lines of the

14   same underlying facts as the one at issue, so as an

15   immediate appeal, and that's, of course, assuming I guess

16   that Mr. Waugh's client would lose on that.  If they don't

17   lose on that, there's not going to be an appeal, but the

18   idea that we would need to take an immediate interlocutory

19   appeal just doesn't fit this case.

20           Certainly have a dispositive holding of the

21   Eleventh Circuit, and it is clear, Your Honor, that the

22   immediate interlocutory appeal would not advance the

23   determination of this case as there would remain issues

24   and parties to be resolved going forward regardless of

25   that.  So that would be our position on certification,

 1    Your Honor.

 2         THE COURT:  Mr. Waugh, did you want to address any

 3    aspects?  I have reviewed obviously your motion and you

 4    may now address anything that remains with regard to the

 5    request for certification to the extent you'd like to make

 6    some argument.

 7         MR. WAUGH:  Thank you, Your Honor.  Just to be

 8    clear, I believe that the second prong is met, that there

 9    is a substantial ground for difference of opinion and

10    there's two reasons for that.  One is that the statute

11    itself in the Lanham Act controls no language at all

12    creating this cause of action, but, second of all, there

13    are now courts that are recognizing that, including in

14    2019 the Northern District of Illinois, it's in our

15    motion, but the Court described the Eleventh Circuit

16    holding as novel.  And in that line, I suppose, Your

17    Honor, this motion -- I mean I agree this motion is

18    awkward.  This motion is novel, but I think it would

19    advance the resolution of the litigation in a third prong

20    insofar as it might save time on the back end.  If there

21    ever is a judgment against my client, this train gets

22    rolling now and they've got dozens of cases using this

23    cause of action.  This may provide certainty not just in

24    our case but all around the circuit.

25         THE COURT:  Okay.  With regard to the lawyer

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Defendants' motion for summary judgment as to Count IV
2    which is Docket Entry 295, I'm going to deny the motion
3    for summary judgment, partial summary judgment as to --
4    because it only applies as to Count IV.  The case law in
5    the Eleventh Circuit which I've already addressed, Duty
6    Free America's, Inc. versus Estee Lauder Companies is
7    contrary to the position advanced in the motion and, of
8    course, that decision is binding on this Court, and so I
9    would deny the motion.
10           With regard to certifying the issue for immediate
11   interlocutory appeal, I'm also going to deny that request.
12   When I look at the prongs that must be established before
13   the judge may certify a question for immediate appeal, in
14   this case, I don't believe that prong two has been met.
15   The question of law should be one as to which there's
16   substantial ground for difference of opinion, because
17   there's not a basis for substantial difference of opinion
18   within the Eleventh Circuit, if you will, because that's
19   the controlling decision.
20           There may be other circuits or other district
21   courts throughout the country that differ, but in terms of
22   certifying it to the Eleventh Circuit, I don't think that
23   there are grounds for difference of opinion among the
24   courts in the Eleventh Circuit.  I also don't see how the
25   appeal would materially advance the ultimate termination

1   of the litigations as this is only with regard to one

2   count and there are other counts that the Court would

3   still need to address here, and so I really fail to see

4   how it would advance the ultimate termination.

5           And to the extent it involves a controlling

6   question of law, again, it's not with regard to the entire

7   case but with regard to a count.  And so for those

8   reasons, the Court is not going to certify the issue for

9   immediate interlocutory appeal and the motion will be

10  denied.

11          I'm now going to go to the motion to dismiss at

12  Doc. 283, and it is the Plaintiff's motion to dismiss the

13  Montgomery Defendants' amended counterclaims.

14  Mr. Christu.

15          MR. CHRISTU:  Thank you, Your Honor.  So, Your

16  Honor, I know you know the background because Your Honor

17  previously entered an order here, but very briefly, in the

18  response to the motion to dismiss at ECF 288 which they

19  filed back in June of last year, the Defendants generally

20  recognized the defects in their pleading I think, or in

21  that response it advises that the Court that they expected

22  to be filing a further amended complaint to help shore up

23  the counts and to assert related claims.

24          Now, eight months have passed since they made that

25  pronouncement to the Court in their response and no

1    further amendment was ever proposed, so we are left with

2    the claims in ECF 283.  And although the Court did in its

3    earlier order dismiss the entire prior counterclaim as a

4    shotgun pleading, Your Honor did address the merits of the

5    claims and you did that.  What you said in your order was

6    to provide some guidance to the Defendants in terms of

7    going forward with the amendment.

8            And, Judge, our position is that the defects

9    pleading which were the subject of Your Honor's order at

10   ECF 275 still exists and have not been addressed

11   sufficiently and warrant dismissal again.

12           Judge, where I'd like to start with is the

13   tortious interference count which is Count I.  Your Honor

14   previously found that the original counterclaim lacked any

15   specificity as to specific customers which is a

16   requirement to be pled, and, Your Honor, despite Your

17   Honor's guidance on that point, the Defendants have not

18   addressed this other than really to add some language at

19   Paragraph 17 that they will not be identifying specific

20   customers basically for the same reason that the Court

21   earlier had ruled with respect to on a motion with respect

22   to Wyndham's claims.

23           Judge, those are really apples and oranges.

24   They're really different claims, different theories, and

25   the fact that the Court had earlier made some type of

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    pronouncement with respect to the specific identities of

2    customers on Wyndham's pleadings is not in any way

3    dispositive of that issue on the present pleading before

4    the Court.

5         Wyndham on the contrary did identify specific

6    relationships and made specific claims with respect to

7    interference, and that has not -- is not the case in the

8    pleading before the Court.  They have not alleged, nor do

9    I think they can allege, a single law firm client who was

10   allegedly misled and allegedly apparently left the law

11   firm.  Again, Your Honor, just for background, these are

12   lawyers in a law firm, and so although we sort of speak in

13   terms of customers, here we would be speaking of clients

14   of a law firm, and that's really the only thing, Your

15   Honor, that has materially changed with respect to the

16   earlier counterclaim that you did dismiss and the present

17   one before Your Honor.

18        There just is not any type of allegation in here

19   with respect to any kind of breach of an existing law firm

20   client relationship.  If Your Honor looks at Paragraph 17

21   and 18, which I think are probably the most operative

22   paragraphs, if we're going to find it anywhere, we're

23   going to find it there, and it's not there, Your Honor.

24        In 17 of the Amended Counterclaim, they talk about

25   parties to contracts with the Montgomery Defendants that

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    are being interfered with just generically, and it's

2    really difficult to tell whether they're talking about

3    existing relationships or prospective relationships, seem

4    to be kind of conflating that, but nowhere do they

5    identify or state that they have lost any type of client

6    with respect to any action by Wyndham.

7        In 18 they talk about some type of intimidation in

8    the first line of 18, and the second line they talk about

9    that this may have undermined existing consisting --

10   existing contractual relationship by some type of lawsuit,

11   but they do not say the simple words which need to be

12   said, that they lost any customers or there was any breach

13   of agreement as a result of any actions by Wyndham, and

14   they certainly do not identify any type of -- with any

15   type of specificity who those people are or when that

16   happened or anything of the nature.

17       And, Your Honor, as we pointed out in our ruling

18   papers and I believe a case Your Honor used the last time

19   in Your Honor's order, the Dunn versus ALPA case, a claim

20   of this nature, Your Honor, requires a relationship with a

21   particular party, not a relationship with a general

22   business community or some kind of group.

23       And, Your Honor, Count I's present language

24   suffers from the same defect that Your Honor identified in

25   the earlier version.  It's not been remedied.  It's

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   nowhere to be found, this allegation of damage lost by

2   these clients occasioned by our clients' conduct, and,

3   Your Honor, you know, I think at this point the dismissal

4   of this count should be with prejudice.  I don't think

5   they've met their burden and, you know, we're given the

6   chance to fix that and did not, and that's our position on

7   that count, Your Honor.

8        I don't know if you want to go count by count and

9   have Counsel respond.  I leave that up to Your Honor.

10       THE COURT:  I'm going to go count by count, and so

11   I'll now hear the response to the argument regarding the

12   tortious interference claim.

13       MR. WAUGH:  Thank you, Your Honor.  In the motion

14   to dismiss, there are only two reasons stated for

15   dismissal of Count I, and learned opposing Counsel has

16   been presented an argument that is not in the motion

17   regarding the failure to state damages, but what I will --

18   I'll begin by saying that a specific class of business

19   relationship is identified, did take the Court's

20   previously ruling to heart in Paragraph 17 where at the

21   end of the paragraph it states that these are -- and

22   opposing Counsel brought it up, that it's the class of

23   clients, people who are clients with my clients, Your

24   Honor.  In other words, we're only talking about people

25   who have existing client relationships with my clients,

1    and so that we think is specific class.  It's not a group

2    of prospective people out in the ether who haven't

3    retained my clients yet, so that was one ground that they

4    raised.

5         Another ground was that in the motion they stated

6    that Count I is entirely predicated upon a statement by

7    Plaintiffs that is true; in other words, my client has

8    alleged tortious interference based on a false statement;

9    that false statement being that once a timeshare owner has

10   retained legal Counsel, Wyndham is no longer able to deal

11   directly with them.  Our contention that that is clearly

12   false.  They cited a Florida Rule of Professional Conduct

13   4-4.2 which has no bearing on that whatsoever.  That rule

14   states basically that a lawyer must not communicate about

15   the subject of the representation with a person the lawyer

16   knows to be represented by another lawyer in the matter.

17   In other words, this rule applies to lawyers, Your Honor,

18   not the client.

19        It happens all the time that parties resolve

20   things without help or I should say interference of their

21   lawyers, and what my client is alleging has to be taken as

22   true for the purposes of a motion to dismiss.

23        Their motion to dismiss just says, well, it should

24   be dismissed because they're wrong, but this is a matter

25   for proof later on, Your Honor, and so that is why it

1    should be denied as to Count I.

2            THE COURT:  Next count, next argument.

3            MR. CHRISTU:  Judge, the next one, and Counsel did

4    touch on it, I wanted to -- one argument we do have with

5    respect to all counts, I, II and III, I do have an

6    argument that is the alleged, the only really alleged

7    misrepresentation and that is the dismissed representation

8    that they speak of in terms of that Wyndham can't work

9    with you if you retain Counsel because you now have

10   Counsel and we can't work with you directly is an

11   objectively true statement, and so we have argued

12   alternatively with respect to both Count I, tortious

13   interference, Count II libel, and Count III, unfair

14   competition, that that is grounds for dismissal with

15   respect to all three.

16           And, Judge, with respect to the unfair competition

17   issue, it really -- on that Count, it really is the same

18   argument with respect to the earlier one.  The elements

19   really are the same insofar as Count III and Count I, but

20   Count III, Your Honor, has an additional problem and for

21   that reason it's the same elements basically of unfair

22   competition as Count I, but Count III has an additional

23   problem, Your Honor.

24           Count III, the unfair competition count, only

25   incorporates Paragraphs 1 through 13 and Paragraph 15 and

 1    that's the only other allegations that are contained

 2    within Count III of unfair competition.  So, this is the

 3    same problem that Your Honor pointed out at Page 11 of

 4    Your Honor's prior order.  There are effectively no

 5    factual allegations supporting the allegations, the claims

 6    in Count III for unfair competition.

 7         If Your Honor looks at those paragraphs that I

 8    cited that are incorporated, they are just introductory

 9    allegations with respect to who the parties are, et

10    cetera, so the defect that Your Honor found with respect

11    to that claim and noted at Page 11 of Your Honor's order

12    is still present and has not been remedied and is

13    additionally defective and dismissible on that ground.

14         THE COURT:  Mr. Waugh, would you like to respond

15    to that?

16         MR. WAUGH:  Yes, Your Honor.  I admit that Count

17    III is skimpy, and as opposing Counsel remarked, we filed

18    this response back in June.  I did imply that I would

19    follow up with a motion for leave to amend, but without

20    the Court's guidance on filing -- for filing another

21    amended pleading, taking over for previous Counsel, I mean

22    I don't know if the Court recalls, but we now live in an

23    age of cat filters and dog filters on Zoom calls, but it

24    used to be that people might take their pants off when

25    going into a Federal courthouse, and so we've been doing a

1    little bit of damage control.  This counterclaim was

2    prepared as I took over.  I'm defending it as best I can.

3    I do think Count III is skimpy.  That argument was not

4    raised in the motion to dismiss.

5          The arguments that were raised in the motion to

6    dismiss were that it's based on a false statement and/or

7    that is demonstrably true, and, again, Your Honor, we

8    believe that that is a matter of proof for later on

9    because the allegations have to be taken as true.

10          THE COURT:  Now, that argument was raised in the

11    motion to dismiss, that you did -- I am pretty sure I

12    recall reading that in the motion to dismiss.

13          MR. CHRISTU:  I believe it's Page 6, Your Honor,

14    of the motion.

15          MR. WAUGH:  You know, it's in the footnote.  I

16    stand corrected, yes, Your Honor.

17          THE COURT:  All right.  And so we will now go on

18    to the next argument.

19          MR. CHRISTU:  Thank you, Your Honor.  Next I'd

20    like to address the argument with respect to Count IV, the

21    Lanham Act count.  Your Honor, this count was likewise

22    previously dismissed by Your Honor.  The argument here is

23    basically they have not alleged proper standing under the

24    Lexmark case.  There's an absence of any allegations, Your

25    Honor, which make the necessary type of link or causation

1  between this Ovation program which they allege is

2  misleading of Wyndham's and any possible causal damage to

3  the lawyers or this law firm.  Lexmark, of course, Your

4  Honor, requires that the alleged injury have a

5  sufficiently -- quote, "sufficiently close connection to

6  the allegedly false statements."

7       Not only, Your Honor, is that not alleged in the

8  Amended Counterclaim, but frankly it really probably can't

9  be because it doesn't really make any sense.  This Ovation

10 program is a program that Wyndham puts out that operates

11 to potentially benefit Wyndham customers by allowing them

12 to exit their timeshare.  Even if this program were

13 somehow illusory or false or something, some problem with

14 it in terms of how it's been represented, the only

15 possible harm flowing from that would be to Wyndham

16 customers who, you know, might have been mislead, but the

17 idea that this law firm was damaged by that is not only

18 not pled and not alleged but really wouldn't make any

19 sense anyway, so that we think was a fatal defect back

20 then and is a fate -- back when Your Honor ruled the first

21 time and is a defect again.

22      Also not addressed in this Amended Counterclaim

23 which was the subject of Your Honor's earlier order, and

24 I'm specifically looking at Page 13 of Your Honor's order

25 with respect to this count and whether it states a claim,

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   it continues to fail to state a claim and does not

2   sufficiently allege why these advertisements are false or

3   misleading.

4         Again, Your Honor, what we have is purely

5   conclusory statements as to the false or misleading nature

6   of these advertisements.  If you look at the Amended

7   Counterclaim Paragraphs 40, 42, 44, and 46, they are

8   simply sentences that say these ads are false and

9   misleading with no specificity whatsoever.  The alleged

10  untrue statements concerning the Ovation program are not

11  even contained anywhere in the alleged false ads, and

12  these alleged false ads do not mention the law firm or

13  these lawyers.

14        So for those reasons, Your Honor, we don't think

15  Your Honor -- we don't think it was fixed for Your Honor's

16  prior finding of defective allegations, and we would

17  state, Your Honor -- would suggest that it's still

18  dismissible as pled.

19        THE COURT:  All right.  Response with regard to

20  Count IV.

21        MR. WAUGH:  Yes, Your Honor.  As a first matter,

22  obviously this proceeds under the Lanham Act.  This count

23  is based -- the general theory for this count is that

24  there's competition between Wyndham and my client, and

25  that comes straight from Wyndham's pleading, and the basis

1    for that competition is that Plaintiffs have a program

2    called Ovation.  And this is pled.  This is in Count IV.

3    This Ovation program purports to help people exit or

4    possibly get some kind of relief from their timeshare

5    obligations.  My clients are in the business of also

6    providing some relief, and sometimes that relief is

7    actually sending them to Ovation, but the problem is even

8    though it's been stated to the Court that it's not

9    explained anywhere where the false statements are, it's in

10   Paragraphs 49, 52 and 56 in spades.

11       Paragraph 56 talks about how the Ovation

12   representations which are made above are deceptive by

13   showing that they will only take certain kinds of owners.

14   So, when they take people who do not have financing on

15   their timeshares and reject all of the ones that have

16   financing or have mortgages on their timeshares, they're

17   misleading people into Ovation and away from my clients.

18   My clients are therefore damaged by this Ovation program

19   and the false deceptive statements that are promulgated.

20   It deprives them of a better option.  That's my client's

21   contention.  It deprives my clients of business and it

22   leads the clients down a garden path.

23       This is similar actually to the Lanham Act claim

24   brought by Wyndham which is that when clients -- excuse

25   me -- when timeshare owners hire my clients, they're being

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    sold, you know, a bridge in Brooklyn, you know, and that

2    they don't get what they bargained for.  Same here

3    with Ovation.

4         This is adequately pled for the purpose of

5    standing because in the Lexmark case what they hold is,

6    quote, "a Plaintiff can be directly injured by a

7    misrepresentation where a third-party and not the

8    Plaintiff... relied on the representation."

9         Here, what my clients are pleading is that there

10   is a set of persons who are being directly injured by

11   these misrepresentations about Ovation.  They're not

12   getting out fast enough.  This is in Paragraph 56.

13   They're not getting the ends that they desire.  This is in

14   Paragraph 56; that they relied on these statements, and

15   that this is causing damage to my client because then my

16   clients aren't receiving the business.  These

17   representations are specifically designed and aimed at my

18   client.

19        Your Honor, in Paragraph 47, there's a sentence

20   that is italicized and it says, "owners please take note.

21   If you retain a timeshare exit attorney, Wyndham is

22   legally prohibited from working directly with you on a

23   financial solution."  These kind of false statements, Your

24   Honor, are well within the ambit of the Lanham Act and we

25   believe that it should be something that my client is

1      entitled to prove and that's the case, Your Honor.

2            THE COURT:  Well, and I'll tell you, in reviewing

3      your counterclaim, it did appear initially that perhaps it

4      was conclusory to the extent that you made statements and

5      then, for example, Paragraph 50 "on information and belief

6      Wyndham's said representations of false, misleading and

7      deceptive."  There you do go on to say, "and in particular

8      because Wyndham does not have adequate, qualified or

9      effective resellers."  But then as I continue to read, I

10     did see that you were -- at least I was of the impression

11     that you were explaining what the deceptive, illusory and

12     inadequate statements are with regard to this case in

13     Paragraph 56 which goes on to set forth more information.

14     That seems to be what you're arguing here, is that the

15     information upon which you are relying is contained in

16     Paragraph 56 for the most part.

17           MR. WAUGH:  Yes, Your Honor.

18           THE COURT:  Okay.  I'll go back to Mr. Christu.

19           MR. CHRISTU:  Your Honor, turning back to Your

20     Honor's order where we kind of started with insofar as the

21     insufficiency of these allegations, I think when you look

22     at 56, there is some description about the Ovation program

23     and what they believe to be deceptive, illusory and

24     inadequate, but what's missing is what was still missing

25     the last time is any type of connection between those

1    allegations and any harm suffered by this law firm.

2          The Ovation program does not refer -- these ads do

3    not refer to the law firm.  They do not refer to these

4    lawyers, and they have failed to allege the necessary

5    causal link between these alleged misrepresentations and

6    any damage to this law firm.  They haven't alleged it nor

7    do I think they really can allege it because they -- it

8    doesn't refer to them.  It's not something that is being

9    said with respect to those Defendants.

10         So even if, Your Honor, 56 is more descriptive of

11   what they contend is deceptive, illusory and inadequate,

12   they haven't alleged the next part of that which is the

13   requirement under the case law in order to plead this

14   Lanham Act violation.

15         THE COURT:  Well, they do state that as a result

16   of Wyndham's unlawful acts, the counterclaim Plaintiffs

17   have been damaged, and I'm looking now at Page 23 of the

18   counterclaim.

19         MR. CHRISTU:  Your Honor, I don't mean to

20   interrupt, but to me that is the ultimate conclusory

21   statement.  They don't say how.  They just say it is, and

22   so that's I think exactly what the case law was designed

23   to address especially, you know, post-Iqbal, you know,

24   following, so you have to say something about it.  They do

25   not say why those allegedly false things have damaged this

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    law firm and it's just not there.  I agree the words say

2    it damaged them, but that's it.

3         THE COURT:  All right.  Any other comments on the

4    motion to dismiss?  Anything further, Mr. Waugh?

5         MR. WAUGH:  Yeah, Your Honor.  If this Court was

6    inclined to consider dismissing one or more counts, I

7    would ask the Court to consider possibly considering the

8    motion a motion for a more definite statement, insofar as

9    if there are deficiencies, I think that they would be

10   easily -- easy to remedy.  For example, if the Court did

11   not consider the allegation of damages sufficient in Count

12   IV, that's something that can happen overnight and my

13   clients can plead that.  Normally the allegation of

14   damages is sufficient in say breach of contract actions

15   and so on.  It's normally not pled with a great deal of

16   specificity, unlike fraud allegations, for example, where

17   there's a heightened specificity required.

18        So I would ask that the Court perhaps consider

19   this a motion for a more definite statement or in the

20   alternative grant me three days to file an amended

21   pleading because these would be, I believe, things that

22   are very easy to remedy.  Thank you, Your Honor.

23        THE COURT:  I have obviously reviewed the

24   counterclaim, the motion to dismiss and the response to

25   the motion to dismiss, and while I agree that there's

1    still some deficiencies with regard to the counterclaim,

2    they certainly are not as significant as the ones for the

3    most part addressed in the Court's order at Doc. 275.  I

4    am going to dismiss the counterclaim and that will also

5    provide a bases with regard to some of these affirmative

6    defenses which we will address in just a moment and give

7    the Defendants one final opportunity to amend.  I'll give

8    you 14 days to amend to try and correct some of the

9    deficiencies.

10           One of the things I will certainly agree with the

11   Defendants is that some of the arguments raised by

12   Plaintiffs basically are denials which aren't sufficient

13   for motions to dismiss.  I mean, you know, Wyndham says

14   one thing and then Defendant say one thing and Wyndham

15   says basically, well, that's not true.  Well, that may be

16   all well and good but I can't resolve that issue on a

17   motion to dismiss.

18           On a motion to dismiss I am accepting the

19   allegations as true and then looking to see if the

20   allegations of the complaint sufficiently establish a

21   cause of action.  And there was the one complaint, one

22   count that admittedly was extremely weak.  Which one was

23   that?

24           MR. WAUGH:  Count III, Your Honor.

25           THE COURT:  Count III, yes.  It was Count III.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   Let me get back to it here, where there was just very

2   little information.  Under the common law unfair

3   competition Count III, when you consider the incorporation

4   of the foregoing paragraphs factually, there just were not

5   many facts there.

6        With regard to the standing issue, I think that on

7   the complaint, again, assuming the allegations of the

8   complaint as true, the Court cannot find as a matter of

9   law that there is no standing.  Standing is something that

10  I think is more appropriately addressed particularly with

11  regard to the Lanham Act on a motion for summary judgment

12  where the Court can go beyond the four corners of the

13  complaint.

14       Nevertheless, Defendants will have an opportunity

15  to add any additional language that is needed in order to

16  strengthen their claim in this case.  Same thing with

17  regard -- and that also relates to, as I was discussing,

18  Count IV where Plaintiffs argue that it's conclusory

19  because it does not include the specific bases for the

20  statements that the representations are false, misleading

21  and deceptive, and I think it's just the way that it was

22  drafted.

23       Certainly you have, for example, Paragraph 50 on

24  information and belief, Wyndham's said representations are

25  false, misleading and deceptive, but then when you go

1    further to Paragraph 56, I construe 56 as being the

2    factual basis for those earlier statements that the

3    representations were false, misleading and deceptive and

4    that's what Mr. Waugh, in fact, argued here is that that

5    is the paragraph that provides the support for that

6    argument, so I think that basically this is a complaint

7    that the Defendants should be given an opportunity to fine

8    tune, if you will, not one that I should dismiss with

9    prejudice, and particularly knowing the history and the

10   fact that Mr. Waugh had just recently been retained to

11   represent Defendants in this case and did not have as much

12   time and/or familiarity with the case as original Counsel

13   and so I am going to give you leave to amend.

14        Let me see if there was another one that I wanted

15   to address specifically.  I already talked about the

16   argument that the Counts I through III should be dismissed

17   because they are based upon a true statement.  Again,

18   that's an inadequate basis for me to dismiss a count

19   because that actually goes to the proof, not to the

20   allegations in the complaint.  That's in essence a denial

21   of the claims and that's not something that the Court can

22   determine on a motion to dismiss unless it's just an issue

23   of law, and in this case there are factual contentions

24   that the Court would need to consider.

25        I would agree that with regard to Count I, that

1   the counterclaimants don't -- still don't really specify

2   the business relationship affording them legal rights, and

3   that was something that was addressed in the Court's

4   earlier order, and it's still I think insufficiently pled

5   in the counterclaim, so that would be a basis for

6   dismissal.

7        I would deny it as to the standing issue but

8   without prejudice to standing being asserted on a motion

9   for summary judgment, and I think that by giving leave to

10  amend, that obviously gives the Defendants an opportunity

11  to add more facts to the claims and perhaps even eliminate

12  the standing argument.  So, in other words, I'm going to

13  grant the motion to dismiss in part, deny it in part, give

14  the Defendants leave to amend, 14 days.  This is a final

15  opportunity for amendment.

16       The case is getting old now.  It's a '19 case.

17  This is '21, and I apologize for the delay it's taken us

18  in getting to these motions, but trust me, we have been

19  extremely busy with cases.  I mean you list the people,

20  talk about Covid and how they're working remotely and this

21  and that, well, we're not.  We're here.  We're in court

22  and we're having proceedings, you know, and I actually

23  think that I have more written submissions because of

24  Covid, as I call them to my law clerks, these are Covid

25  filings, and I'm not suggesting that they are in this case

1    but I realize the attorneys aren't out as much in

2    depositions, they're not out as much as they would be at

3    mediations and so you're at your desk or at your homes and

4    you are working and you are filing more pleadings for the

5    Court or more submissions.  Nevertheless, that's the order

6    of the Court on the motion to dismiss.

7         Let's now turn to the motion to strike the

8    affirmative defenses, and the only way -- the best way I

9    know to do this, although it may be a little

10   time-consuming, is just to go through each one.  The

11   motion to strike addresses a number of affirmative

12   defenses, and needless to say, there are still a number of

13   them remaining.  So we will go through them one by one and

14   I will give you my ruling with regard to the motion to

15   strike certain of the Montgomery Defendants' Amended

16   Affirmative Defenses.

17        The second one at issue -- the first one at issue

18   is the Second Affirmative Defense with regard to statute

19   of limitations.

20        MR. CHRISTU:  Thank you, Your Honor.  So, again, I

21   know Your Honor read our filings, and so I'm going to try

22   not to just completely restate what's in them, but I think

23   we were pretty clear, but I'm just going to try to

24   elaborate on each one and then I'll let Your Honor rule.

25        There isn't a specific statute of limitations in

1    the Lanham Act, so I can't just go and say, well, this is

2    what it is and look it up and that everybody on this call

3    is going to be agreeing with what it is.  Okay?  Because

4    there's different arguments that could be made.  There

5    could be some tolling arguments.  There's lots of

6    different types of arguments that could be made on statute

7    of limitations, and so the idea that Counsel for the

8    Defendants suggest, you know, we don't have to tell you

9    that is just I don't think appropriate.  We need some

10   predicate facts that would show how the statute of

11   limitations would apply or which statute.

12           We cite a case to that affect.  And the real --

13   but the real gist of it is putting us on notice.  They

14   know what they mean.  You know, they have some idea where

15   they're coming from on the statute of limitations, but

16   just to say the words statute of limitations is

17   insufficient in this context.

18           THE COURT:  Response.

19           MR. WAUGH:  Well, Your Honor, there is no statute

20   of limitations in the Lanham Act, so this doesn't apply to

21   the Lanham Act claim.  This applies to all the other

22   counts.  And you know what?  Tortious interference statute

23   of limitations --

24           THE COURT:  See, that in and of itself is helpful.

25   That's why your Second Affirmative Defense is deficient,

1   because, I mean, some or all of Plaintiffs' claims are
2   barred by the statute of limitations.  Which one?  If this
3   was a one-count negligence claim before me on diversity
4   jurisdiction, that would be easy.  They would know what
5   the statute of limitations is based upon a negligence
6   claim, but when it's a multi-count complaint and you say
7   some or all, obviously that is deficient.  You may
8   continue.

9         MR. WAUGH:  I accept the criticism from Your Honor
10  and I guess what -- when I look at this claim, I know that
11  the statute of limitations is four years and I know that
12  all the other claims have very -- learned opposing Counsel
13  is Board certified in litigation, that they know what the
14  statute of limitations is for these counts, but I
15  certainly accept the criticism on the Lanham Act point,
16  that there is no statute of limitations for the Lanham
17  Act.

18        THE COURT:  Well, and when you refile, I need you
19  to be specific.  I don't want "some or all."  If it's the
20  tortious interference claim, you say the tortious
21  interference claim.  If it's the Lanham Act claim, well,
22  we know that won't be, then that's fine.  But I mean, you
23  can specify the counts in a multi-count complaint.  I
24  agree, that's just not adequate for a multi-count
25  complaint, so I would grant the motion to strike as to the

1        Second Affirmative Defense.

2               The next one is the Fifth Affirmative Defense.

3               MR. CHRISTU:  Yes, Your Honor.  This one, really

4        the legal basis for this affirmative defense frankly to us

5        is unclear, Your Honor.  It doesn't -- certainly doesn't

6        give it a label.  I mean it doesn't say really what -- you

7        know, it's not like it's just sort of an explanation of a

8        fact pattern, and I guess I just don't know.  It doesn't

9        have a phrase or some type of label associated with it.  I

10       understand what they're saying in the sense of -- but it

11       really is unclear what the legal basis for this is.  And

12       then probably more importantly, which would be the

13       important thing for us to either avoid it or do something

14       in response, it doesn't apply -- explain how this defense

15       would apply to Defendants as third parties and strangers

16       to the contract, so we really need to be able to

17       understand what the legal basis for this one is.

18               THE COURT:  Response.

19               MR. WAUGH:  Your Honor, this is an avoidance

20       because it's an illegality affirmative defense.  No, there

21       is no label and none are required under the rules, but

22       it's an illegality affirmative defense whereby if

23       Plaintiffs' behavior is illegal and my clients are helping

24       them get out of it, then that's an avoidance, and we

25       believe that it applies to all of the causes of action.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1          THE COURT:  Okay.  Then would you state that when

 2     you refile?

 3          MR. WAUGH:  (Nodding head.)

 4          THE COURT:  I'm looking at your response to the

 5     motion to strike and you call it -- you could call it a

 6     hero defense, but these are both really different

 7     iterations of an illegality defense.  That's easy to state

 8     in your Fifth Affirmative Defense so that the opposing

 9     party is on notice as to exactly what you are talking

10     about, so, again, I would grant the motion as to No. 5.

11          No. 6.

12          MR. CHRISTU:  Yes, Your Honor, I'm kind of trying

13     to weave in the response of Counsel as well here.  Part of

14     the problem is sort of the failing to identify the

15     particular portions of statutes and sort of the glomming

16     together, if you will, of some of these, you know,

17     defenses.  They should be limited to one claim per defense

18     so we can adequately respond, and part of the problem here

19     is sort of -- and this really applies to the Sixth, the

20     Eleventh and Twenty-first Affirmative Defense in terms of

21     really not telling us what particular portions of statutes

22     are implicated and not giving us any predicate facts in

23     these defenses, so that's our position on those, Your

24     Honor.  It's really, again, kind of a putting us on notice

25     of what they're really saying here.

1              THE COURT:  Response.

2              MR. WAUGH:  Your Honor, this is indeed another

3      illegality defense that is premised on the Sherman

4      Antitrust Act, however, I have heard the Court's ruling on

5      the previous affirmative defense.  I think the same would

6      apply here.  We could spell it out and give more notice,

7      and so if that's how the Court is so inclined, we're happy

8      to comply.

9              THE COURT:  That is how I am inclined to rule with

10     regard to it, and I would agree that if you have a defense

11     that is based upon the Sherman Act, then I don't think you

12     need to identify it five different times in your

13     affirmative defenses, but I think you should identify the

14     defense in conjunction with the claim that you intend to

15     assert the defense against, so to the extent that you are

16     raising the Sherman Act defense to Count I, and I'm just,

17     of course, you know, using that for illustration purposes,

18     then in a multi-count complaint it's just so much clearer,

19     and that helps you, that helps the Court.  If the case

20     gets to trial, that helps the jury to understand exactly

21     which defenses are raised as to which counts.

22              All right.  So that takes care of the Sixth

23     Affirmative Defense.  You will again address those issues

24     as I have discussed.

25              I think that takes us to the Eleventh which is

1    similar to what was just argued, because again Eleven

2    indicates that, again, it's a violation of the Sherman Act

3    as well as the Florida Antitrust Act.

4            MR. WAUGH:  Yes, Your Honor.

5            THE COURT:  I'm sorry.  Let me start with the

6    proponent of the motion.

7            Mr. Christu, Number Eleven.

8            MR. CHRISTU:  Yes.  I think honestly -- I mean our

9    argument was the same for Six, Eleven and Twenty-one.  We

10   would make really the same argument.

11           THE COURT:  Okay.  And Mr. Waugh.

12           MR. WAUGH:  On Eleven, I think the Court's holding

13   is dispositive of that one, but on Twenty-one, believe it

14   or not, I actually identified the claim to which it is

15   addressed which is FDUTPA.

16           THE COURT:  Yes.

17           MR. WAUGH:  So I would respectfully submit that

18   this one actually complies with what the Court had said on

19   the last two.

20           THE COURT:  I tend to agree with you that

21   Twenty-one is more specific.  The Twenty-first Affirmative

22   Defense, you do identify FDUTPA and you indicate why, that

23   the Montgomery Defendants' actions are permitted under

24   Federal and state law, specifically the Sherman Act, The

25   Florida Antitrust Act and Florida Common law.  So I do, I

1    agree, I think that Twenty-one is fine.

2         MR. CHRISTU:  Your Honor, we just skipped over

3    Seven, if I could go back to Seven.

4         THE COURT:  Yes, let's go back to Seven.  Seven is

5    a standing affirmative defense.

6         MR. CHRISTU:  Judge, Seven is really kind of easy.

7    I mean I think any time a defense starts out, you know,

8    "certain Plaintiffs," I mean key in "certain Plaintiffs."

9    We need specificity.  I think they're even kind of

10   admitting that one frankly, so anyway, it doesn't identify

11   which claims that supposedly lack standing.  Certain

12   Plaintiffs lack standing and we're not sure which claims.

13        THE COURT:  Response.

14        MR. WAUGH:  Your Honor, the point of this

15   affirmative defense is that we have in this case, let's

16   see, one, two, three, four, five, six, seven Plaintiffs

17   that I can see, and I might have miscounted, but Shell

18   Vacations, SVC-West, SVC-Hawaii, they all are going to

19   have different timeshare owners associated with them.

20   What this affirmative defense is supposed to be saying --

21   and the fact that I have to explain it speaks for itself

22   as the Court has pointed out, but the point of this

23   affirmative defense is that not all Plaintiffs are

24   probably going to have the same standing under each count,

25   and we don't know which ones it is until we actually get

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    into the discovery, so I can spell that out a little bit

2    more, but that's what we mean.

3            THE COURT:  And I understand that when you

4    submitted the affirmative defenses and counterclaim that

5    you may not have had as much information about the case as

6    you do now based upon discovery, although I know there

7    have been some discovery issues in this case too, but I do

8    think that since you will have an opportunity to amend, to

9    the extent that you can spell out more, you should.

10   Again, it's difficult because this is a multi-counts claim

11   with multiple parties, Plaintiffs and Defendants, and it

12   is difficult to know which ones lack standing, which ones

13   don't, and as to which claims.  I know that there's an

14   issue with regard to standing at least that was raised in

15   the motion to dismiss for the Lanham Act, but I'm not sure

16   of what the basis is that Plaintiffs lack standing for

17   some or all of their claims.  I would agree that as to

18   Number Seven, more specificity is required.

19           MR. WAUGH:  Understood.

20           THE COURT:  We have already talked about Eleven.

21   My understanding is that you have agreed to strike Number

22   Fifteen.

23           MR. WAUGH:  That's correct, Your Honor, a meet and

24   confer that worked.

25           THE COURT:  Wonderful.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1           MR. CHRISTU:  Yes, it did, Your Honor.

2           THE COURT:  Wonderful.  That now takes us to

3    Sixteen.

4           MR. CHRISTU:  Yes.  I think Sixteen and Seventeen

5    to some extent are related, Your Honor, and I can't really

6    say it any better than I said it in our motion to dismiss,

7    Judge, because I laid it out pretty good.  You know, they

8    really are denials, not affirmative defenses, Judge, and

9    we cited some case law to you there.

10          You know, I think this defense is insufficient and

11   frankly confusing just in terms of how much it relates

12   between Sixteen and Seventeen.  As we said, we have to

13   demonstrate standing as part of our false advertising

14   claim and so them just saying, you know, you don't have it

15   really is more of a denial than a defense and so on that

16   basis we think it should be stricken.

17          THE COURT:  Response.

18          MR. WAUGH:  Yes, Your Honor, I think the Supreme

19   Court case Lexmark, 572 U. S. 118 says that this is a

20   standing issue, and a standing normally is something that

21   can be raised as an affirmative defense, so we've done so.

22   The Supreme Court gave two different bases.  We have

23   enumerated them in these two affirmative defenses and

24   explained sufficient facts to put Plaintiffs on notice

25   about why we're claiming it.

1        THE COURT:  I would agree with you as to Sixteen

2    and Seventeen.  I think that standing can be raised as an

3    affirmative defense and you have provided more information

4    with regard to Sixteen and Seventeen, so I would deny the

5    motion to strike as to Sixteen and Seventeen.  That takes

6    us to Twenty.

7        MR. CHRISTU:  Yes, Your Honor, Twenty, it's just

8    not clear what legal basis this is based on.  Again, it

9    does not really have a title.  I understand you don't have

10   to put a title on or what you're talking about, but you do

11   that at your peril.  If you just sort of describe a

12   situation, and here we have the words "legally justified."

13   We have the word "privileged."  We have a concept of

14   "terminable at will," and we have a concept of

15   "expectancy," and all of this is just sort of jumbled into

16   the Twenty Affirmative Defense and it just is not clear at

17   all to us what the real legal basis is with respect to

18   this defense.

19       THE COURT:  Response.

20       MR. WAUGH:  Your Honor, I think we explained it

21   extremely clear in our response in opposition, but the

22   Court has made its point, that if I can explain it in a

23   response in opposition, I might as well explain it in the

24   pleading to make it easy and actually fair, so I would

25   concede that I could do better on that point.

1          THE COURT:  All right.  I would grant the motion

2     to strike as to the Twentieth Affirmative Defense.

3          We're now at Number Twenty-One.

4          MR. CHRISTU:  Judge, I'm not sure --

5          MR. WAUGH:  The Court ruled on that earlier.

6          THE COURT:  Did I rule on that?  I did.  Sure.

7     I've ruled on Twenty-one.  We're now at Twenty-three.

8          MR. CHRISTU:  Judge, I'm going to skip over

9     Twenty-three.  I don't think we're going to contest that

10    one.  I may ask my partner to my left.  If I might move on

11    to Twenty-five.

12         THE COURT:  Okay.  You may.

13         MR. CHRISTU:  So, Your Honor, on Twenty-five, our

14    argument there is set forth in our matters is this just

15    isn't legally facially.  I understand it's not just one to

16    disagree with but it's just a legally facially

17    unsupportable defense because this doctrine is one where

18    you would be conspiring -- it only applies when you're

19    conspiring with yourself internally.

20         Both the allegations to which this defense is

21    asserted is a conspiracy with separate entities, so as a

22    matter of law, this defense could not be a legally

23    supportable defense to that claim and as such we would

24    seek it to be stricken.

25         THE COURT:  Response.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1            MR. WAUGH:  Actually, Your Honor, that is not what

2       is pled unfortunately.  That's why we put the affirmative

3       defense in there.  I'm pulling up the Complaint to bring

4       up the allegations, but this relates to Counts VI, there's

5       a conspiracy -- no, not VI.  I apologize, Your Honor.

6       It's taking me a moment.

7            THE COURT:  Count VIII.

8            MR. WAUGH:  Yes, Your Honor.  Well, here's the

9       thing.  Count VIII, civil conspiracy against all

10      Defendants.  It doesn't specify.  It's not limited in who

11      they're conspiring with, and what it actually states in

12      this Count is that all Defendants conspired with each

13      other, and this includes the individual Defendants and the

14      corporate Defendants.  It makes no distinction whatsoever,

15      so the reason why this affirmative defense exists is to

16      protect any liability from the corporate entity's

17      conspiring with their own individual agents which is

18      exactly what they've pled.

19           THE COURT:  Okay.  Response.  Anything further on

20      that one, Mr. Christu?

21           MR. CHRISTU:  No, Your Honor.

22           THE COURT:  I think that Count III does state a

23      claim for civil conspiracy against all Defendants, and so

24      I would deny the motion to strike as to Number

25      Twenty-five.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1              So have you made a decision about Twenty-three or

2     are you withdrawing it?

3              MR. CHRISTU:  Yes, we'll withdraw it, Your Honor.

4              THE COURT:  All right.  So the motion to strike as

5     to Twenty-three is withdrawn.  And I think that resolves

6     all of the issues raised on the motion to strike.  Is

7     there anything else --

8              MR. CHRISTU:  Yes, Your Honor.

9              THE COURT:  -- that the Court needs to be aware of

10    regarding this case?

11             MR. CHRISTU:  I don't think at this time, Your

12    Honor.  Obviously Your Honor ruled 14 days for the

13    amendment; correct?

14             THE COURT:  Yes.  Yes.

15             MR. CHRISTU:  Fourteen days.

16             THE COURT:  Anything, Mr. Waugh?

17             MR. WAUGH:  No.  Nothing further from my end, Your

18    Honor.  Thank you.

19             THE COURT:  All right.  So let me state, since

20    I've taken up over an hour of your time and mine going

21    through this orally today, do not expect a lengthy

22    detailed order.  It will be shorter, and it will basically

23    address my rulings so that you have something in writing,

24    but to the extent that you require details, you can

25    contact the court reporter to get a transcript.

1          MR. CHRISTU:  Yes, Your Honor.

2          THE COURT:  Anything else?

3          MR. CHRISTU:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  Thank you-all.  That

5     concludes this proceeding.  We are adjourned.  You are

6     free to leave the meeting.

7     (Court was adjourned at 2:40 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1   UNITED STATES DISTRICT COURT   )

 2                                   )

 3   MIDDLE DISTRICT OF FLORIDA      )

 4

 5          I, SHARON A. MILLER, Official Court Reporter for

 6   the United States District Court, Middle District of

 7   Florida, do hereby certify that pursuant to Section 753,

 8   Title 28, United States Code that the foregoing is a true

 9   and correct transcript of the stenographic notes taken by

10   computer-aided transcription taken in the above-entitled

11   cause by the undersigned and that the transcript format is

12   in conformance with the regulations of the Judicial

13   conference of the United States.

14   /S/Sharon A. Miller, CSR, RPR, CRR, FCRR

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```