# EXHIBIT E

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                      CASE NO. 19-CV-24704-JEM

BLUEGREEN VACATIONS UNLIMITED,
INC., et al.,

                                          Miami, Florida
              Plaintiff(s),
                                          August 26, 2021
         vs.

MONTGOMERY & NEWCOMB, LLC,
et al.,


                   Defendant(s).     Pages 1 - 211
------------------------------------------------------------

                          MOTION HEARING
             BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S):   ERIC CHRISTU, ESQ.
                        JONATHAN P. HART, ESQ.
                        SHUTTS & BOWEN, LLP
                        525 Okeechobee Boulevard
                        West Palm Beach, FL 33401
                        561-835-8500
                        echristu@shutts.com
                        jhart@shutts.com


FOR THE DEFENDANT(S):   CHRISTIAN W. WAUGH, ESQ.
                        REBA ABRAHAM PEARCE, ESQ.
                        WAUGH GRANT, PLLC
                        201 E. Pine Street
                        Orlando, FL 32801
                        352-750-0325
                        cwaugh@waughgrant.com
                        rapearce@waughgrant.com
```

```
 1    APPEARANCES (CONT'D)

 2    FOR THE DEFENDANT(S):   SAMUEL J. DUBBIN, ESQ.
      Square One              DUBBIN & KRAVETZ, LLP
 3    Development Group       1200 Anastasia Avenue
                              Coral Gables, FL 33134
 4                            (305) 357-9004
                              sdubbin@dubbinkravetz.com
 5

 6

 7    REPORTED BY:            Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
 8                            jemancari@gmail.com

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    INDEX OF EXAMINATION
 2    Examination of:                              Page
 3    MARTHA JANE FARRELL
 4    Direct By Ms. Pearce . . . . . . . . . . . . .12
 5    Cross By Mr. Hart  . . . . . . . . . . . . . .22
 6    SHERRY ELLEN PETERSON
 7    Direct By Ms. Pearce . . . . . . . . . . . . .26
 8    Cross By Mr. Hart  . . . . . . . . . . . . . .40
 9    Redirect By Ms. Pearce . . . . . . . . . . . .45
10    IRENE PARKER
11    Direct By Ms. Pearce . . . . . . . . . . . . .51
12    MARTIN SCOTT MONTGOMERY
13    Direct By Ms. Pearce . . . . . . . . . . . . .67
14    Cross By Mr. Christu . . . . . . . . . . . . 112
15    Redirect By Ms. Pearce . . . . . . . . . . . 145
16    Cross By Mr. Dubbin  . . . . . . . . . . . . 149
17    WILLIAM TODD NEWCOMB
18    Direct By Ms. Pearce . . . . . . . . . . . . 152
19    Cross By Mr. Hart  . . . . . . . . . . . . . 154
20    JASON LEVI HEMINGWAY
21    Direct By Mr. Christu  . . . . . . . . . . . 166
22    Cross By Mr. Waugh . . . . . . . . . . . . . 174
23    Cross By Mr. Dubbin  . . . . . . . . . . . . 178
24
25
```

```
 1                        INDEX OF EXAMINATION
 2    Examination of:                                    Page
 3    JOHN HUNT
 4    Direct By Mr. Christu  . . . . . . . . . . . . 181
 5    Cross By Mr. Waugh . . . . . . . . . . . . . . 184
 6    Cross By Mr. Dubbin  . . . . . . . . . . . . . 190
 7
 8                              EXHIBITS
 9
10    Exhibit No.                                   Received
11    Plaintiff
12     1   . . . . . . . . . . . . . . . . . . . . . 189
13    Defendant
14     4   . . . . . . . . . . . . . . . . . . . .   92
15     5 . . . . . . . . . . . . . . . . . . . . . . .96
```

```
 1   Thereupon,
 2   the following proceedings were held via Zoom videoconference:
 3           THE DEPUTY CLERK:  Bluegreen Vacations Unlimited,
 4   Inc., et al. v. The Montgomery Law Firm, case No. 19 24704,
 5   civil, Martinez.
 6           Counsel, please state your appearances for the record.
 7           MR. HART:  Good morning, your Honor.  Jonathan Hart
 8   and Eric Christu, Shutts & Bowen, on behalf of plaintiffs.
 9           MR. CHRISTU:  Good morning, your Honor.
10           THE COURT:  Good morning.
11           MR. WAUGH:  Good morning, your Honor.  I'm Christian
12   Waugh, and I'm joined by Reba Abraham Pearce, from Waugh Grant,
13   PLLC, on behalf of Montgomery & Newcomb Law.
14           THE COURT:  All right.
15           MR. DUBBIN:  Your Honor, Sam Dubbin, Dubbin & Kravetz,
16   LLP, representing defendant Square One Development Group, Inc.
17           THE COURT:  All right.  Thank you very much.
18           We are here on the motion for a preliminary injunction
19   by, I will call them the Montgomery & Newcomb defendants, and
20   they are moving for this preliminary injunction as to Count III
21   of their counterclaim which alleges a violation of the Clayton
22   Act (inaudible) antitrust litigation.
23           I have reviewed the papers.
24           I am getting some feedback.  Let's see.  Whoever is
25   not speaking -- that seemed to help.
```

|   |   |
|---|---|
| 1 | As I was saying, the preliminary injunction is sought |
| 2 | under Count III of the counterclaim filed by Montgomery & |
| 3 | Newcomb Law defendants.  I have reviewed the papers.  What I |
| 4 | usually do in this case is I ask for the evidence to be |
| 5 | presented first and, then depending on the timing, I may ask |
| 6 | for closing arguments, I may ask for just briefs.  It depends |
| 7 | on how the timing works out. |
| 8 | So I did receive, I believe, exhibit and witness list. |
| 9 | Let me ask Mr. Waugh -- how do I say your name?  I |
| 10 | always butcher it. |
| 11 | MR. WAUGH:  You got it right, your Honor.  It is |
| 12 | Waugh.  Thank you. |
| 13 | THE COURT:  OK.  So let's see.  What evidence do you |
| 14 | plan to present in support of the motion for preliminary |
| 15 | injunction? |
| 16 | MR. WAUGH:  Your Honor, besides what we have in the |
| 17 | papers, I believe we have five witnesses who will be offering |
| 18 | testimony on the record today. |
| 19 | THE COURT:  All right.  Is there any issue -- I'm |
| 20 | looking here for your exhibit list to see if there is any issue |
| 21 | with the proposed exhibits.  Are there objections -- your |
| 22 | exhibit list is docket entry 137.  Are there objections to |
| 23 | those exhibits?  It is eight exhibits. |
| 24 | I guess I will hear from Mr. Hart. |
| 25 | MR. HART:  Yes, your Honor.  Not necessarily, although |

```
 1   that had their name in it.
 2   Q    And were in fact fees split with the lawyer defendants as a
 3   result thereof as stated in Judge Martinez's order?
 4   A    If that means that we collected some money for a client and
 5   then paid the lawyers, then the answer to that is yes.
 6   Q    And with respect to the fees that were paid to the lawyer
 7   defendants, were you personally involved in that process of
 8   paying them?
 9   A    Yes.
10   Q    And do you know how much the lawyer defendants received for
11   their participation in this scheme?
12   A    I believe from my company north of a million and a half.
13   Q    In excess of a million and a half dollars?
14   A    Yes.
15   Q    And that you personally were involved in the getting of
16   those funds to the lawyer defendants?
17   A    Correct.
18   Q    Mr. Hemingway, how is it that this scheme was able to get
19   customers to pay the exit companies such large sums of money,
20   which I understand could be 10, 20, 30, 40,000 dollars?  How is
21   it that it was able to convince the customers to pay those kind
22   of sums?
23   A    There are kind of three things that are important in
24   closing a deal with a client at a table.  One of those things
25   is offering a 100 percent money-back guarantee.  One is having
```

1  attorneys on your side, on the sales team side, that lends
2  legitimacy to the endeavor. And three, that in order to entice
3  the client to pay the sales team to get out of the timeshare,
4  they are generally not able to also continue to make the
5  financial obligations to the resort. So if they can be, you
6  know, convinced of that by the salesperson, then generally the
7  sale -- it was easier to make the sale.
8  Q   For them to pay the exit company and stop paying the
9  developer?
10 A   Correct.
11 Q   And that was known by all that were involved in the
12 presentation of the sales pitches to the customers, correct?
13 A   It would be hard not to know that, yes.
14 Q   And it was known by Mr. Montgomery and Mr. Newcomb,
15 correct?
16 A   I can't speak for what they knew personally, but they would
17 have been involved in -- they were involved in many, many
18 conversations that had to do with the payment of maintenance
19 fees and mortgage payments.
20 Q   And you personally had those conversations with them
21 regarding that this was the way to pitch the customers,
22 correct?
23 A   It is the way the sales team pitched the customers, yes.
24 Q   Yes. And they were aware of that?
25 A   Yes.

```
 1   Q   Well, OK.  So are you aware of any instance in which
 2   Montgomery & Newcomb instructed a Bluegreen owner not to pay
 3   their financial obligations to Bluegreen?
 4   A   I am not.
 5   Q   As part of that third prong, is it your testimony that --
 6   actually, let me ask you this.
 7            Were most of the sales made to people who were already
 8   unable to afford their timeshare obligations?
 9            MR. CHRISTU:  Objection to form, your Honor.  I think
10   there is no foundation for how Mr. Hemingway would know about
11   each individual customer's --
12            THE COURT:  If he knows.  You can ask him do you know,
13   Mr. Waugh.
14   BY MR. WAUGH:
15   Q   Do you know, Mr. Hemingway, if most of the persons who you
16   ended up referring to lawyer defendants were already generally
17   unable to pay their interests?
18   A   I don't have an answer for that.  I didn't speak with most
19   of the clients personally.
20   Q   But that was an important part of the sales model, correct?
21   A   It was an important part of the sales model.
22   Q   How do you know it is an important part of the sales model?
23   A   Because I was very familiar with the sales model.
24   Q   Is a corollary to that that you would anticipate more
25   referrals from people who were generally unable to pay than
```