# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| WYNDHAM VACATION OWNERSHIP, INC.; et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE MONTGOMERY LAW FIRM, LLC; et al., <br><br> Defendants. <br> _____ / | Case No. 8:19-cv-1895-T-36CPT <br><br><br> **PLAINTIFFS' RENEWED MOTION FOR DEFAULT FINAL JUDGMENT AND PERMANENT INJUNCTION ORDER AGAINST CATALYST CONSULTING FIRM, LLC** |

Plaintiffs Wyndham Vacation Ownership, Inc. ("WVO"), Wyndham Vacation Resorts, Inc. ("WVR"), Wyndham Resort Development Corporation ("WRDC"), Shell Vacations, LLC ("SV"), SVC-West, LLC ("SVC-West"), SVC-Americana, LLC ("SVC-Americana"), and SVC-Hawaii, LLC ("SVC-Hawaii") (collectively "Plaintiffs"), pursuant to Federal Rules of Civil Procedure Rule 55(b) and 65, renew their motion for entry of a Default Final Judgment against Defendant Catalyst Consulting Firm, LLC ("Catalyst"). Plaintiffs' original Motion for Default Judgment and Permanent Injunction (Doc. 633), was denied without prejudice and with leave to file a motion renewing their request for relief to address certain issues raised by the Court. Doc. 648

Plaintiffs are entitled to a default judgment and request a judgment of monetary damages in the amount of $424,828.52, comprised of $225,252.52 in

actual contract damages and $199,576.00 in disgorgement damages. Plaintiffs further move for the entry of a Permanent Injunction Order in the form attached hereto as **Exhibit "A."**

## FACTUAL BACKGROUND

Plaintiffs filed their Complaint for Damages and Injunctive Relief (Doc. 1) on December 10, 2018 against several defendants including Catalyst. Plaintiffs alleged four claims against Catalyst: (1) Count III for False and Misleading Advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1); (2) Count VII for Tortious Interference with Contractual Relations; (3) Count VIII for Civil Conspiracy; and (4) Count IX for Violation of Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.204(1).

On January 9, 2019, David Steinfeld, Esq., filed an answer on behalf of Catalyst. Doc. 12. On September 25, 2020, the Court entered an Order allowing Mr. Steinfeld to withdraw as counsel for Catalyst. Doc. 306 ("Order"). The Court's Order required that within 14 days (by October 9, 2020), Catalyst advise the Court in writing of the name, business address, email address, and telephone number of successor counsel. *See* Order ¶ 3.

On October 19, 2020, Plaintiffs filed a *Motion for Entry of Default* as to Catalyst because it failed to obtain counsel as required by the Order. Doc. 313 ("Default Motion"). On November 18, 2020, the Court entered an *Order to Show Cause*, directing Catalyst to show why it failed to obtain successor

counsel and why a default should not be entered.  Doc. 320.  Catalyst failed to show cause, and on December 11, 2020, the Court granted the Default Motion, struck Catalyst's pleading (Doc. 12), and ordered the Clerk of Court to enter a default against Catalyst.  Doc. 324.  The Clerk entered a default against Catalyst the same day. Doc. 325 ("Default").

## ADMITTED FACTS

A default functions as an admission of the well-pled allegations of the complaint.  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[t]he effect of a default judgment is that the defendant '… admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'"); *see also Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005).

Catalyst has therefore admitted all well-pled allegations of Plaintiffs' Complaint as a result of the Default, including the following:

1.    Catalyst is a timeshare exit company that used false and misleading advertisements to deceive Wyndham Owners into hiring Catalyst to "cancel" or "exit" their timeshare, at substantial cost.  Compl., ¶¶ 6-11.

2.    Upon being hired, Catalyst instructs, deceives, induces or persuades Wyndham Owners to stop fulfilling their contractual payment obligations to Wyndham and fails to advise Wyndham Owners about the consequences of ceasing their payments to Wyndham.  *Id.* ¶¶ 12-14.

3.     After the timeshare interests are foreclosed for non-payment, Catalyst claims it successfully obtained a cancellation or exit of the timeshare contract. *Id.* ¶¶ 15-18.

4.     Catalyst engaged in false and misleading advertising about its services and ability to assist Wyndham Owners with their Timeshare Contracts. *Id.* ¶¶ 96-97, 109.

5.     Catalyst engaged in false and misleading advertising on its website, www.catalystconsultingfirm.com. *Id.* ¶¶ 109-110.

6.     Catalyst also engaged in false and misleading advertising during in person sales presentations, including making misrepresentations about Wyndham's maintenance fees, regarding money back guarantees, and regarding Catalyst's ability to exit a Wyndham Owner from their Timeshare Contract. *Id.* ¶¶ 111-115, 118-130.

7.     Catalyst also engaged in false and misleading advertising through telemarketing and direct mail advertising. *Id.* ¶¶ 131-135, 137-138.

8.     Catalyst's false and misleading advertisements were not puffery and caused harm to Wyndham. *Id.* ¶¶ 143-144.

9.     Catalyst willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers. These statements were literally false or materially misleading. *Id.* ¶ 181.

10.    The Catalyst advertisements were commercial speech.  *Id.* ¶ 182.

11.    The Catalyst advertisements deceived or had the capacity to deceive a substantial segment of the consuming public.  *Id.* ¶ 183.

12.    Catalyst's deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services and cease making payments to Wyndham.  *Id.* ¶ 184.

13.    Catalyst's services affect interstate commerce. *Id.* ¶ 186.

14.    Catalyst is operating as a competitor to Wyndham.  *Id.* ¶ 187.

15.    Wyndham has been and continues to be injured as a result of Defendants' false and misleading statements.  *Id.* ¶ 188.

16.    Wyndham has contractual relationships with its timeshare owners.  *Id.* ¶ 236.

17.    Catalyst had knowledge of the contractual relationships between Wyndham and the Wyndham Owners.  *Id.* ¶ 237.

18.    Catalyst intentionally caused or induced Wyndham Owners to breach and/or terminate their contractual relationships with Plaintiffs by instructing Wyndham Owners to stop paying their timeshare loans and maintenance fees.  *Id.* ¶¶ 238-239.

19.    Catalyst's actions were done with an improper motive, were not made in good faith, and were made without justification or privilege.  *Id.* ¶¶ 242, 244.

20.    As a direct and proximate result of Catalyst's conduct, Plaintiffs suffered damages. *Id.* ¶ 246.

21.    Catalyst engaged in deceptive and unfair practices, including luring Wyndham Owners into procuring illusory services with false advertising and using misrepresentations. *Id.* ¶ 268.

22.    As a result of Defendants' actions, Wyndham has suffered financial loss. *Id.* ¶ 272.

## DEFAULT JUDGMENT STANDARD

The decision to grant a default judgment is within the trial court's discretion. *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).  When considering a motion for default judgment, the Court must conduct an analysis akin to a motion to dismiss, and judgment should be entered where the plaintiff's complaint alleges sufficient facts to state a valid cause of action. *Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689, 695 (5th Cir. 2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6).")).

## ARGUMENT

Plaintiffs are entitled to entry of a default judgment on the causes of action against Catalyst. *See* Counts III, VII, VIII, and IX.  Pursuant to that

judgment, the Court should award monetary damages and enter a Permanent Injunction Order, as discussed below.

## I.   **The Court Has Jurisdiction over the Case and Parties.**

As an initial matter, the Court has subject matter jurisdiction over the claims at issue and personal jurisdiction over Catalyst.[1]

### A. The Court has Subject Matter Jurisdiction.

"Where a plaintiff's well-pleaded complaint alleges a cause of action arising under federal law, subject matter jurisdiction exists for a federal court to determine whether the allegations entitle him to relief." *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 891 (11th Cir. 2013) (citation omitted); 28 U.S.C. § 1331. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

Count III of the Complaint contains well-pled allegations, addressed in detail *infra*, § II.A, that Catalyst engaged in false and misleading advertising in violation of the Lanham Act. Compl., ¶¶ 179-90. The Court thus has federal question jurisdiction over the Lanham Act claim. 28 U.S.C. § 1331.

---

[1] Tr. at 4:20-5:24. References to the June 14 hearing transcript identifying the Court's inquiries are referred to as "Tr. at __."

This federal question jurisdiction gives the Court supplemental jurisdiction over Plaintiffs' remaining state law claims against Catalyst, which are tortious interference with contractual relations, civil conspiracy, and violation of FDUTPA. These state law claims, in addition to the Lanham Act claim, all arise from Catalyst's timeshare-exit scheme wherein it uses false and misleading advertising to lure Wyndham Owners into signing up for Catalyst's services, charges exorbitant up-front fees for a wholly illusory service, and subsequently deceives Wyndham Owners into wrongfully breaching their contracts with Plaintiffs.

Because all of the claims against Catalyst are related and part of the same case or controversy, the Court has supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(a).

## B. <u>The Court Has Personal Jurisdiction.</u>

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process." *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 925 n. 15 (11th Cir. 2003). Plaintiffs meet both requirements.

### 1. <u>Catalyst was Properly Served.</u>

Catalyst waived service of process on January 15, 2019. *See* Doc. 21. Service of process on Catalyst was therefore proper. Fed. R. Civ. P. 4(d).

### 2. <u>The Court has Personal Jurisdiction over Catalyst.</u>

To establish jurisdiction, the Court must determine whether the "Defendants' activities satisfy the Florida long-arm statute and, if satisfied, whether the extension [of] jurisdiction comports with the due process requirements of the Fourteenth Amendment." *Meier v. Sun*, 288 F.3d 1264, 1269 (11th Cir. 2002).

### a. Catalyst Waived Personal Jurisdiction Objections.

Initially, Catalyst waived any objection to personal jurisdiction. "[A] defendant waives any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a Fed.R.Civ.P. 12 motion." *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004). Here, Catalyst did not raise any objection to personal jurisdiction in its Answer. *See generally* Doc. 12. In fact, Catalyst admitted Plaintiffs' jurisdictional allegations. Doc. 12, ¶¶ 51-54 (in response to Plaintiffs' jurisdictional allegations, Catalyst responded: "Admitted for jurisdictional purposes only.").

### b. Catalyst's Activities Satisfy Section 48.193(1)(a)(2), Florida Statutes.

Even if Catalyst did not waive any objection to personal jurisdiction, all of Plaintiffs' claims against Catalyst satisfy Section 48.193(1)(a)(2), Florida Statutes (the "Long-Arm Statute"). The Long-Arm Statute "provides for the assertion of jurisdiction over an out-of-state defendant who commits a tortious act in Florida." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass,*

*P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (citing Fla. Stat. § 48.193(1)(b)). The Eleventh Circuit has interpreted this provision broadly, finding such language to "apply to defendants committing tortious acts outside the state that cause injury in Florida." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999). Therefore, the out-of-state defendants' physical presence in Florida is not required. *Horizon,* 421 F.3d at 1168 (quoting *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002)).

Plaintiffs allege that Catalyst committed the tortious acts of interfering, and conspiring to interfere, with Plaintiffs' contractual relations by improperly inducing Wyndham Owners to "stop paying their timeshare loans and maintenance fees and/or engaging in fraudulent transfers." Compl., ¶¶ 239, 250-262. Such interference, and conspiracy to interfere, with Plaintiffs' contracts and relationships is unlawful and harms Plaintiffs, who are Florida companies; thus, there is injury in Florida. *Id.*, ¶¶ 25-31, 243, 46. Because the claims involve tortious acts which caused injury in Florida, the Long-Arm Statute applies.

Plaintiffs' FDUTPA claim also falls under subsection (1)(a)(2) of the Long-Arm Statute. "[W]here plaintiffs adequately plead their FDUTPA claim and allege an injury in Florida, jurisdiction lies under subsection (2) of the Florida long-arm statute." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp.

3d 1183, 1236 (S.D. Fla. 2021); *see also Rogers v. Omni Solution, Inc.,* 2010 WL 4136145, at *4 (S.D. Fla. Oct. 19, 2010).

Here, Plaintiffs adequately plead that Catalyst engaged in deceptive and unfair practices, in violation of FDUTPA, through its timeshare-exit scheme. Complaint, ¶¶ 263-68; *see infra*, § II.D. (deeper discussion of the sufficiency of Plaintiffs' FDUTPA claim). Such unlawful actions not only harm Florida consumers, but cause harm to Plaintiffs in Florida. Compl., ¶¶ 52(c), 271-72. The Long-Arm Statute thus applies.

Violations of the Lanham Act also constitute tortious acts for the purpose of the Long-Arm Statute, and may be measured by where the injury occurred. *See Williams v. Elect. Co., Inc. v. Honeywell, Inc.,* 854 F.2d 389, 394 (11th Cir. 1988) (holding that violations of the Lanham Act is a tortious act for purposes of Fla. Stat. § 48.193(1)(b)); *Gazelles FL, Inc. v. Cupp,* 2018 WL 7364591, at *6 (M.D. Fla. Sept. 26, 2018) (same and collecting cases); *id*. at *7 ("Allegations that a Florida resident suffered injury from violations of the Lanham Act or of FDUTPA are sufficient to state a prima facie case for personal jurisdiction under [Fla. Stat. § 48.193(1)(a)(2) ].").

Here, Plaintiffs allege that Catalyst engaged in and disseminated false advertising widely through various means, such as a website freely accessible for all consumers, including consumers in Florida, in-person sales presentations, telemarketing, and direct mail advertising. Compl., ¶¶ 52(a),

109-12, 118, 122, 125, 131-38. The goal of such advertising is to retain Wyndham Owners as clients through the false statements that Catalyst and its co-defendants can properly get owners out of their timeshare contracts, and then lure owners into breaching their contract as the only means by which the false promises can be fulfilled. *Id.*, ¶ 96. These actions necessarily harm Plaintiffs in Florida. *Id.*, ¶ 144-45. Plaintiffs' Lanham Act claim thus falls under the purview of the Long-Arm Statute.

> ### c. *Exercising Jurisdiction over Catalyst Would not Violate the Due Process Clause.*

With the Long-Arm Statute met, the due process analysis examines:

> (1) [W]hether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). All parts of the due process test are met here, as well.

First, all of the defendants in this case, including Catalyst, had contacts with Florida through their various advertising. Compl., ¶¶ 52(a), 95-138. More specifically, the defendants, including Catalyst, rely on the false

demand letters sent by the Montgomery Defendants[2] to Plaintiffs, in Florida, for their scheme to work. *Id.*, ¶¶ 52(b), 75-85. The first element is thus met.

Second, Catalyst purposefully availed itself of the privilege of conducting activities within Florida by running a business that is dependent on obtaining Florida companies' customers as its own clientele, and by advertising on a wide scale, including to Florida consumers. *See* Compl., ¶¶ 52(a), (c), 144. Catalyst thus should have reasonably anticipated being haled into court in Florida for such business. *Louis Vuitton*, 736 F.3d at 1357.

Finally, exercising jurisdiction over Catalyst comports with traditional notions of fair play and substantial justice because Catalyst has offered no evidence that it will be burdened by having to litigate this case in Florida, Florida has an interest in adjudicating the dispute which involves harm to Florida companies and consumers, and such forum is in Plaintiffs' interest in obtaining convenient and effective relief and in the judicial system's interest in resolving the dispute. *Id.* at 1358.

## II.   **Plaintiffs Are Entitled To Default Judgment**

### A. Default Judgment Is Appropriate For Count III - False Advertising Under The Lanham Act.

---

[2] The Montgomery Law Firm, LLC; Montgomery & Newcomb, LLC; M. Scott Montgomery, Esq.; and W. Todd Newcomb, Esq.

To state a claim for false advertising under the Lanham Act, Plaintiffs must allege: (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The well-plead facts in Plaintiffs' Complaint clearly establish each of these necessary elements.

1.  Plaintiffs Alleged that Catalyst Engaged in False and Misleading Advertising.

Plaintiffs alleged that Catalyst engaged in false and misleading advertising by making false representations and/or promises about their illusory services, including but not limited to:

1.  Stating that their services provide a lawful "exit," "cancellation," or "release" of a timeshare contract;

2.  Stating that their services provide a "process" or "method" that results in a timeshare owner being freed from the obligations and benefits of a timeshare contract;

3.  Stating that their services provide a "legal," "lawful," "legitimate," or "safe" means of terminating or transferring a timeshare contract;

4.  Stating that their services provide a "guaranteed" means of terminating or transferring a timeshare contract;

5. Stating that their services allow an owner to stop paying mortgage payments or maintenance fees, or to otherwise avoid the contractual obligations of a timeshare contract;

Compl., ¶ 97(a)-(e).   These statements and representations were literally false and/or misleading because Catalyst lacked the ability to perform any of these advertised services.  *Id.*

Plaintiffs also alleged that Catalyst utilizes deceptive and high-pressure in-person sales presentations to mislead timeshare owners by employing "scare tactics" that owners would be subject to perpetual and increasing maintenance fees, which is false.  *Id.* ¶¶ 115, 118-122. Catalyst also made false and misleading statements through telemarketing and direct mail regarding the ability to teach Plaintiffs' customers how to get rid of their timeshare interests.  *Id.* ¶¶ 133-34.

2. <u>Plaintiffs Alleged that Catalyst's Advertising Deceived Plaintiffs' Timeshare Owners.</u>

Plaintiffs alleged that Catalyst's false and misleading advertising deceived consumers, including Plaintiffs' timeshare owners, and induced them to spend thousands, if not tens of thousands of dollars, each to purchase Catalyst's illusory "service," which caused them to breach their contracts with Plaintiffs because they were under the false belief that they were participating in a "safe" and "legal" exit strategy.  *Id.* ¶¶ 96, 143, 183. Plaintiffs alleged that Catalyst further deceived consumers by concealing or

misrepresenting legitimate exit options the consumers may have had, such as the Wyndham Ovation® Program. *Id.* ¶ 185.

### 3. Plaintiffs Alleged that Catalyst's Advertising Materially Affected Purchasing Decisions of Plaintiffs' Timeshare Owners.

Plaintiffs alleged that Catalyst's deception was material in that it was likely to influence the consumers' decisions whether to retain Catalyst's services, cease making payments to Plaintiffs, or to utilize the Ovation® Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Plaintiffs. *Id.* ¶ 184.

### 4. Plaintiffs Alleged that Catalyst's Advertised Service Affects Interstate Commerce.

Plaintiffs alleged that the advertisements were made in interstate commerce. *Id.* ¶ 186. Catalyst is a Missouri LLC (*id.* ¶ 50), but Catalyst directs it activities to consumers across the county, including in Florida, and further, operate websites that are freely accessible nationwide. *Id.* ¶ 52(b).

### 5. Plaintiffs Alleged Past and Continuing Injuries Arising from Catalyst's Advertising.

Plaintiffs alleged actual harm caused by Catalyst's scam. *Id.* ¶ 188. Catalyst's ongoing scam has resulted in Plaintiffs' loss of millions of dollars of revenue. *Id.* ¶¶ 21, 23, 188. Further, Catalyst purposefully interfered with Plaintiffs' contracts with its timeshare owners and instructed those owners to stop making payments owed to Plaintiffs under those contracts. *Id.* ¶¶ 13,

144, 148.   Plaintiffs are incurring thousands of dollars in delinquent payments owed to them and have been, and will continue to be, forced to expend monies to foreclose on delinquent timeshare contracts to attempt to recoup lost revenue.  *Id.* ¶ 150.

Accordingly, the Court should enter a default judgment as to Catalyst's liability on Count III.

### B. Default Judgment Is Appropriate For Count VII – Tortious Interference.

"The elements of a Florida law tortious interference with contractual relations claim are: (1) the existence of a contract; (2) the defendant's knowledge thereof; (3) the defendant's intentional and unjustified procurement of a breach thereof; and (4) damages." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018) (citation omitted). Plaintiffs' factual allegations satisfy each element, and the evidence cited below (Sec. II(A)(1), *infra*), confirms those allegations.

#### 1. Plaintiffs Alleged the Existence of Contracts with its Timeshare Owners.

Plaintiffs alleged that they have contractual relationships with their timeshare owners (Compl., ¶ 236), specifically alleging:

> Timeshare ownership is a contractual relationship.  Wyndham has valid and binding contracts (the "Timeshare Contracts") with

identifiable individuals who purchased timeshare interests from Wyndham (the "Wyndham Owners").

*Id.* ¶ 5.

### 2. Plaintiffs Alleged that Catalyst Had Knowledge of Plaintiffs' Contracts.

Plaintiffs alleged that Catalyst has knowledge of the contractual relationships between Plaintiffs and the Wyndham Owners: "[t]he very fact that Plaintiffs have a business relationship with the Wyndham Owners is the basis upon which the Catalyst and the Montgomery Law Defendants sought to establish a relationship with the Wyndham Owners." *Id.* ¶ 236.

### 3. Plaintiffs Alleged that Catalyst Intentionally Interfered with Plaintiffs' Contracts without Justification.

Plaintiffs alleged that Catalyst solicited identifiable Wyndham Owners and persuaded them to hire Catalyst to help "cancel" their Timeshare Contracts and thereafter intentionally procured breaches of those contracts by instructing Wyndham Owners to stop paying their timeshare loans and maintenance fees and/or engaging in fraudulent transfers. *Id.* ¶¶ 238-39, 243. Further, Plaintiffs alleged that Catalyst does not have any justification or privilege in procuring the breach of Plaintiffs' contractual relationships. *Id.* ¶¶ 8, 244. Plaintiffs further alleged that Catalyst has no right to offer the "services" they purport to offer, stating, as an example:

> [Catalyst] cannot truthfully advertise, offer, or provide a Wyndham Owner with a lawful termination, release, or rescission of any Timeshare Contract, because such result requires the agreement of the other party to such Contract, namely Wyndham, yet Wyndham has never authorized the TPE Defendants to advertise or make a public offer regarding Wyndham's timeshare agreements.

*Id.* ¶ 97(a), *see also id.* ¶ 97(b)-(e).

### 4. Plaintiffs Alleged that They Have Suffered Damages.

Plaintiffs alleged that they have suffered damages as a direct and proximate result of Catalyst's actions. *Id.* ¶¶ 246, 13, 21, 23, and 144.

Notably, the Court has already declined to dismiss similar claims against certain other Defendants, finding that Plaintiffs adequately alleged a cause of action for tortious interference. Doc. 144 at 8-11. Equally here, Plaintiffs' well-plead allegations establish a valid cause of action for tortious interference, and the Court should enter a default judgment as to Count VII.

## C. Default Judgment Is Appropriate For Count VIII – Civil Conspiracy

Count VIII asserts a claim for civil conspiracy. A civil conspiracy claim requires: (1) "an agreement between two or more parties," (2) "to do an unlawful act or to do a lawful act by unlawful means," (3) "the doing of some overt act in pursuance of the conspiracy," and (4) "damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money*

*Purchase Plan & Tr. v. Abbott*, 561 F. App'x. 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).

Notably, the Court has already found that Count VIII states a valid cause of action. *See* Doc. 144, at 8-11.

### 1. Plaintiffs Alleged that an Agreement Exists between the Parties to Commit an Unlawful Act.

Plaintiffs alleged that Catalyst was part of an agreed-upon scam with others. Compl., ¶¶ 33, 38, 46, 50, 60-86, 252. Plaintiffs specifically diagramed the overall structure of the conspiracy and each party's relative role therein, attached as "Exhibit 1" to Plaintiffs' Complaint (*see* Doc. 1-2).

### 2. Plaintiffs Alleged that Catalyst's Scheme Was Unlawful.

Plaintiffs alleged that the scheme was unlawful. Compl., ¶¶ 146, 153, 252-61. Plaintiffs alleged that defendants "mislead Wyndham Owners into thinking that the TPE Defendants' services and commercial activities will lead to a lawful release, rescission, termination, cancellation, or transfer of their Timeshare Contracts, when in reality, TPE Defendants deceive and induce Wyndham Owners into breaching the Timeshare Contracts which unlawfully terminates those Contracts." *Id*. ¶ 96. Plaintiffs alleged that all defendants acted in concert to injure Plaintiffs. *Id*. ¶ 258.

The facts alleged establish that Catalyst conspired to violate the Lanham Act (*id.* at Count III) and to tortiously interfere with Plaintiffs' contracts. *Id.* at Count VII.

### 3. Plaintiffs Alleged that Each Party Engaged in an Overt Act in Furtherance of the Conspiracy.

Plaintiffs alleged that each of the parties, including Catalyst, "committed or engaged in an overt act in furtherance of their unlawful conspiracy to interfere with Plaintiffs' contractual relations or to induce Plaintiffs' customers to breach their Timeshare Contracts." *Id.* ¶ 254. Plaintiffs support their allegation with well-plead factual allegations outlining how each party was involved in the scam and what acts they did in furtherance of the overall conspiracy. *Id.* ¶¶ 60-86. The Court already noted the sufficiency of those allegations. Doc. 144 at 10-11.

### 4. Plaintiffs Alleged that They Suffered Damages Caused by Defendants' Conspiracy.

Plaintiffs alleged that Defendants, acting in concert, have engaged in an unlawful scheme to take advantage of timeshare owners and cause Plaintiffs millions of dollars in actual damages. Compl., ¶ 258; *see also id.* ¶¶ 13, 21, 23, and 144.

Accordingly, the Court should enter a default judgment as to Catalyst's liability on Count VIII.

### D. Default Judgment Is Appropriate for Count IX – FDUTPA

Count IX asserts a claim that Catalyst violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") which prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). To state a claim for FDUTPA, a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, 2:18-cv-408-FTM-38MRM, 2019 WL 277733, at *10 (M.D. Fla. Jan. 22, 2019) (quoting *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015)).

#### 1. <u>Plaintiffs Alleged that Catalyst Engaged in Deceptive and Unfair Acts.</u>

Plaintiffs alleged that "Defendants are engaged in deceptive and unfair practices, including luring Wyndham Owners into procuring Defendants' illusory services with false advertising and using misrepresentations to convince Wyndham consumers to pay substantial fees to 'cancel' their contracts with Wyndham, when, in many instances, a lawful termination is only available to consumers directly from Wyndham, a party to the Timeshare Contracts, through the Ovation® Program or otherwise." Compl., ¶ 268.

Plaintiffs further alleged that Catalyst and the other defendants "deceive hundreds of Wyndham Owners into retaining Defendants, including the Montgomery Law Defendants, at substantial cost, to implement Defendants' purported 'cancellation' or 'transfer' services related to their Timeshare Contracts." *Id*. ¶ 11. "Upon being retained, Defendants instruct, deceive, induce, or persuade Wyndham Owners to stop fulfilling their contractual obligations under the Timeshare Contracts" (*Id*. ¶ 13), but "Defendants do not disclose to the Wyndham Owners the consequences of ceasing payments, or that their 'cancellation' and 'exit' will actually result in an unlawful breach of the Timeshare Contracts due to non-payment, leading to a non-judicial foreclosure of their timeshare interests." *Id*. ¶ 14.  Plaintiffs alleged that "[e]ach Wyndham Owner pays Defendants thousands of dollars to essentially breach a Timeshare Contract that the Wyndham Owner could have breached on his or her own, for free[,] Defendants' 'cancellation' services are therefore illusory, and the Wyndham Owners often do not realize the scam until after the damage is done when their credit rating is badly hurt due to the default and/or foreclosure." *Id*. ¶ 18.

2. Plaintiffs Alleged that Catalyst's Deceptive Acts Caused Plaintiffs Harm.

Plaintiffs alleged that Catalyst's actions have caused them financial harm.  *Id*. ¶ 272, *see also id*. ¶¶ 13, 21, 23, and 144.

Accordingly, the Court should enter a default judgment as to Catalyst's liability on Count IX.

## III.   Plaintiffs Are Entitled To Damages And A Permanent Injunction Order

### A. Wyndham Is Entitled to Monetary Damages

"In entering a final default judgment, it is not necessary for the Court to hold a hearing if the damages are liquidated or ascertainable from documentary evidence or affidavits." *Shandong Airlines Co., Ltd. v. CAPT, LLC*, 650 F. Supp. 2d 1202, 1207 (M.D. Fla. 2009) (citation omitted). Plaintiffs have deposition transcripts and affidavits to establish actual damages in favor of WVO and WVR ("Wyndham"). *See Dec. of Ramona Harrington*, ¶¶ 2-29 ("Harrington Dec."), attached as **Exhibit B.** Plaintiffs also have limited discovery from Catalyst to support disgorgement damages.

### 1. Wyndham is entitled to its actual damages.

Catalyst admitted the allegations of the Complaint, which are sufficient to establish liability on the claims pled, but Wyndham also obtained testimony from certain Wyndham Owners who retained Catalyst.   Each owner testified that Catalyst induced them to cease paying Wyndham, which, at a minimum, entitles Wyndham to damages for tortious interference.

Roger Leake- Mr. Leake has a timeshare contract with WVR. *See* Harrington Dec.¶¶ 12, 13, 29.  Leake received an advertisement in the mail

from Catalyst to attend a free dinner at a hotel in Louisville, Kentucky to get information about getting out of his timeshare contract.  Deposition of Leake ("Leake Dep.") at 25:13-26:20, relevant excerpts attached as **Exhibit C**. Leake attended the presentation.  *Id.* at 27:1-3.  There was an initial presentation with a white board and power point or slides.  *Id.* at 29:25-32:21. During the initial presentation, Catalyst stated it worked with the Montgomery Defendants.  *Id.* at 35:20-36:12, 42:14-18.  After the initial presentation, there was a one-on-one presentation.  *Id.* 34:13-17.  A representative of Montgomery Defendants was at the presentation who reviewed a form completed by Leake.  *Id.* at 34:18-35:19, 36:14-20.

Leake ultimately hired Catalyst and agreed to pay it $23,500.  *Id.* at 37:14-38:20; 66:25-68:5. At the presentation, Catalyst told Leake that if he hired Catalyst, he should make his last payment and it would to take care of the rest.  *Id.* at 39:17-40:2. Catalyst instructed him to cancel the credit card that was being used to make payments to Wyndham.  *Id.* at 40:3-16.

Leake followed the instruction to make the last payment, cancel the card, and to stop making payments. *Id.* at 39: 17- 40:16. Leake had previously not missed any payments on his maintenance fees or loan.  *Id.* at 24:15-25:12. Leake is now delinquent on his timeshare contract and has an outstanding unpaid principal loan balance of $38,547.41. Harrington Dec. at ¶¶ 23-25, 29.

<u>Ronald Blazkiewicz</u> – Mr. Blazkiewicz had been a Wyndham timeshare Owner since the 1970's.   Deposition of Blazkiewicz ("Blazkiewicz Dep.") at 9:4-10:8, relevant excerpts attached as **Exhibit D**. Prior to 2019, Blazkiewicz had never missed a payment to Wyndham.   *Id.* at 13:15-19. Blazkiewicz received a letter from Catalyst and subsequently attended a Catalyst presentation at Red Lobster with several other people.  *Id.* at 13:20-15:10.

Blazkiewicz hired Catalyst and paid it $18,000.00.   *Id.* at 18:8-19:3. Blazkiewicz ceased paying Wyndham because Catalyst told him that they would take care of everything.  *Id.* at 22:3-23:15; 31:21-32:11.  Blazkiewicz is now in default of his timeshare contract and has an outstanding unpaid principal loan balance of $129,169.91.  Harrington Dec. at ¶¶ 23-25, 29.

<u>Ernest Rosemond</u>- Mr. Rosemond is a Wyndham timeshare Owner who has owned various timeshares since the 1990's.   Deposition of Rosemond ("Rosemond Dep.") at 12:5-14:11; relevant excerpts attached as **Exhibit E**. Rosemond received an advertisement in the mail for a Catalyst seminar at a restaurant in New Jersey about getting out of his timeshare contract.  *Id.* at 17:3-19:17, 29:6-31:23. Rosemond attended the seminar.  *Id.* at 20:10-21:3.

During the presentation, Rosemond was instructed not to pay Wyndham during the exit process, and he stopped paying Wyndham relying on that instruction.   *Id*. at 23:24-25:1. Rosemond is now delinquent on his

timeshare contract and has an outstanding unpaid principal loan balance of $57,535.20. Harrington Dec. at ¶¶ 23-25, 29.

Accordingly, for the Leake, Blazkiewicz, and Rosemond contracts, Wyndham has suffered $225,252.52 in actual damages.

### 2. Plaintiffs are entitled to disgorgement damages

Plaintiffs are also entitled to recover Catalyst's profits. *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1315 (S.D. Fla. 1998) (Lanham act damages include (1) defendant's profits; (2) plaintiff's damages; and (3) costs) (citing 15 U.S.C. § 1117)); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019) ("[t]he Lanham Act permits recovery of profits because actual damages are often difficult to prove."). Plaintiffs obtained limited discovery as a result of Catalyst's default, and therefore could only address a fraction of their actual damages. Accordingly, the Court should also award damages based on Catalyst's sales.[3]

Prior to defaulting, Catalyst produced limited records relating to Wyndham Owners who hired Catalyst, including Service Agreements. Copies are attached hereto as **Exhibit F**. Based on those records, Catalyst received $199,576.00 in down payments from Wyndham Owners for which Plaintiffs

---

[3] Plaintiffs clarify that they are not seeking an accounting, but rather seek only disgorgement in the amount of Catalyst's sales that Plaintiffs can ascertain based on the limited discovery produced in this case. *See* Tr. at 7:20-21; 10:12-21.

seek disgorgement.  A summary of the Service Agreements is attached hereto as **Exhibit G**.  The Court should award Plaintiffs damages in that amount since there is no dispute Catalyst made those sales. *Nutrivida*, 46 F. Supp. 2d at 1315 (in assessing profits, "the plaintiff shall be required to prove defendant's sales only").[4]

3. <u>An award of both actual damages and disgorgement of Catalyst's profits is not impermissible double recovery.</u>

An award of actual damages and disgorgement will not be an impermissible double recovery and is permitted by case law and facts.[5]

Courts have found in similar timeshare-exit cases that to prove entitlement to tortious interference damages a plaintiff must put forth evidence demonstrating interference on an owner-by-owner basis. *See Westgate Resorts, Ltd. v. Sussman,* 2019 WL 3836534, at *2 (M.D. Fla. Aug. 15, 2019) (finding the plaintiff did not meet its burden in establishing tortious interference damages "where the exact evidence missing is the circumstances surrounding these 175 owners' nonpayments"). This evidence is often direct testimony from the owners. *See id*. at *1, 3.

---

[4] The Service Agreements often reflect a higher transaction price, but Plaintiffs are limiting the disgorgement damages to the down payment to avoid any evidentiary issues because Wyndham was forestalled from garnering evidence that Catalyst received any later payments.

[5] Tr. at 6:10-7:3.

Accordingly, Plaintiffs' request for tortious interference damages was restricted by Catalyst's default and therefore limited to the three owners who provided deposition testimony. *See supra*, § III.A.1. Plaintiffs' injuries, however, are not limited to the harm attendant to the three deposed owners. *See* Exhibits B, F, G (exhibits in support of Plaintiffs' request for damages and disgorgement); Compl., ¶¶ 11, 21, 143-45. Such certainty is demonstrated by the widespread reach of Catalyst's solicitation of and false advertisements to owners. Compl., ¶¶ 11, 93, 109, 111-12, 131, 134-35, 137.

Because the full extent of Plaintiffs' injury is difficult to prove, due to the nature of the injury, the evidence required to obtain actual damages, and the lack of discovery due to Catalyst's default, Plaintiffs seek the equitable remedy of disgorgement to redress such harm which cannot be redressed by actual damages. *Hard Candy,* 921 F.3d at 1353 ("[t]he Lanham Act permits recovery of profits because actual damages are often difficult to prove.").

Such an award is permitted, and, because the intentional, widespread damage caused by Catalyst will not be fully compensated through actual damages, the interests of justice are served by awarding both actual damages and disgorgement. *Wildlife Rsch. Ctr., Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131, 1135 (D. Minn. 2005) ("for violations of the Lanham Act based on false advertising, a plaintiff's recovery may include both actual damages

and the defendant's profits"); *see also Ameritox, Ltd. v. Millennium Laby's, Inc.*, 2014 WL 1456347, at *8 (M.D. Fla. Apr. 14, 2014) (same)[6].

Finally, Plaintiffs no longer seek disgorgement damages for owners Ronald Blazkiewicz and Ernest Rosemond, for whom Plaintiffs seek tortious interference damages.[7] Because there is now no overlap in owners for which Plaintiffs seek actual damages versus disgorgement, the facts of this case may be distinguished from *TB Food USA, LL v. American Mariculture, Inc.*, where the court declined to award disgorgement where such overlap in amounts claimed existed. 2022 WL 3028061, at *18 (M.D. Fla. Aug. 1, 2022).

For these reasons, an award of both actual damages and disgorgement will not be an impermissible double recovery by Plaintiffs.

## B.    Plaintiffs Are Entitled to Entry of a Permanent Injunction

Plaintiffs pled entitlement to injunctive relief in connection with their Lanham Act and FDUTPA claims[8]. Compl., ¶¶ 145-54, 190, Count IX, Wherefore Clause, 273.

---

[6] Catalyst did not produce contracts for all of its Wyndham Owners. For example, Plaintiffs deposed and seek actual damages for Mr. Leake, but Catalyst did not produce a copy of its contract with Mr. Leake so Plaintiffs never sought disgorgement damages for Mr. Leake.

[7] Tr. at 6:13-7:1; 8:5-9.

[8] Plaintiffs do not seek injunctive relief for the tortious interference claim. Tr. at 12:7-13:22.

Under § 1116 of the Lanham Act, the Court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). False advertising falls under §1125(a)(1) of the Lanham Act; thus injunctive relief is available to prevent Catalyst from conducting future false advertising.

Additionally, Florida's Deceptive and Unfair Trade Practices Act, Florida Statute § 501.211(1), permits "a claim for injunctive relief by 'anyone aggrieved' by an unfair or deceptive act, which has occurred, is now occurring, or is likely to occur in the future." *Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*, 123 So. 3d 1149, 1151 (Fla. 5th DCA 2012).

Injunctive relief is available in a default judgment. *See, e.g., Petmed Express, Inc. v. Medpets.com*, 336 F. Supp. 2d 1213, 1222-23 (S.D. Fla. 2004) (granting permanent injunction against defaulted defendant). However, Plaintiffs must still establish the traditional elements that (1) they have suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) the issuance of an injunction is in the public's interest. *eBay Inc., v. MercExchange, LLC*, 547 U.S. 388, 391-93 (2006).[9] Each of these factors is satisfied in this case.

---

[9] Tr. at 14:21-16:17; 17:16-18:1.

1.   Catalyst's Wrongful Conduct Causes Plaintiffs
Irreparable Harm.

Plaintiffs have demonstrated success on the merits of their Lanham Act
and FDUTPA claims through Plaintiffs' well-pled allegations of such claims,
to which Catalyst has admitted by virtue of default. *Supra*, § II.A-D; *Sony
Music Entm't, Inc. v. Global Arts Prods.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla.
1999) (finding that the defendants' default satisfied the success on the merits
and irreparable harm elements for permanent injunctive relief).

Plaintiffs are irreparably harmed through Catalyst's scheme of
soliciting Wyndham Owners using false and misleading advertising; charging
exorbitant up-front fees for a wholly illusory service; and subsequently
deceiving Wyndham Owners into wrongfully breaching their contracts by
instructing and/or persuading them to stop making payments on the
timeshare contracts, including all mortgage, maintenance, and tax payments
associated with their timeshares. Compl., ¶¶ 147-148 (alleging irreparable
harm, deemed admitted due to Catalyst's default); *see also Taser Int'l, Inc. v.
Phazzer Elecs., Inc.*, 2017 WL 3584906, at *3 (M.D. Fla. July 21, 2017), *aff'd*,
754 F. App'x 955 (Fed. Cir. 2018) ("[i]n the instant case, the entry of default
against Phazzer establishes the existence of an irreparable injury.").

By deceiving Wyndham Owners into defaulting on their contracts,
Catalyst disrupts and causes immediate and ongoing harm to Plaintiffs'

business with its owners, including those owners that default and those that do not. Compl., ¶¶ 147-50; *see Wyndham Vacation Ownership, Inc. v. Bonds*, 2021 WL 4948147, at *6 (M.D. Fla. July 27, 2021), *report and recommendation adopted*, 2021 WL 8895116 (M.D. Fla. Aug. 13, 2021) (granting default judgment and a permanent injunction, and explaining, "Bonds's actions in the Timeshare Exit Scheme resulted in irreparable harm to Plaintiffs' business because he 'deceiv[ed] Wyndham [Owners] to stop making payments on their [t]imeshare [c]ontracts ... including all mortgage, maintenance, and tax payments associated with their timeshares'").

Moreover, when Catalyst makes false statements and misrepresentations regarding Plaintiffs' business, contracts, and the ability to cancel those contracts, Plaintiffs are harmed by the confusion and damage to Plaintiffs' reputation and relationships that results from such actions. Compl., ¶¶ 20 (explaining the confusion that occurs when Catalyst employs the fraudulent "Viking Ship" method), 95-98, 118 (Catalyst sales presentations "denigrat[e] timeshare developers in general, and Wyndham in particular," and scare owners with "distorted, misleading" numbers), 122 (Catalyst sales presentations falsely state what makes a Wyndham contract "valid"), 129, 144, 182, 185, 188, 268, 273; *see Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."

(quotation omitted)); *Fam. First Life, LLC v. Rutstein*, 2023 WL 2866554, at *11 (S.D. Fla. Jan. 30, 2023) ("Damage to reputation and lost revenues can constitute irreparable harm."). This harm to Plaintiffs' reputation, relationship with its owners, and the integrity of its business can occur even when a Wyndham Owner exposed to Catalyst's false statements and misrepresentations does not purchase Catalyst's services.

In sum, Plaintiffs are irreparably harmed by Catalyst's unlawful scheme which harms Plaintiffs' business, revenues, relationships with their owners, and reputation.

### 2.   Plaintiffs Have No Adequate Remedy at Law.

There is no adequate remedy at law available to address the irreparable harm Plaintiffs continue to suffer at the hands of Catalyst's scheme. *See* Compl., ¶¶ 151 (alleging such conduct is ongoing, deemed admitted due to Catalyst's default), 188 (same), 273 (same). Indeed, Catalyst's "failure to respond or otherwise appear makes it difficult for Plaintiff[s] to prevent further [harm] absent an injunction." *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016).

Moreover, the disgorgement sought by Plaintiffs does not adequately remedy the irreparable injury. Disgorgement is measured by Catalyst's sales, in other words, the amount owners pay to Catalyst for their alleged services. *See supra*, § III.A.2. However, such payments to Catalyst, which are almost

always less than the outstanding balance on the owners' mortgages, are thus a fraction of what Plaintiffs actually lose upon owners' defaults. *See supra*, § III.A.1-2. Such remedy is thus insufficient to fully remedy Plaintiffs' loss.

Nor can such loss be wholly remedied through monetary means. Catalyst's conduct damages Plaintiffs' relationship with its owners, sometimes severing the relationship entirely, and impacts future revenue. Moreover, without an injunction Catalyst will continue to engage in its false advertising and misrepresentations, which further causes confusion and harm to Plaintiffs' business relationships, and harms Plaintiffs' reputation.

Accordingly, Plaintiffs have no adequate remedy at law because money damages will not address the ongoing nature of the harm Plaintiffs continue to suffer. *See Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*, Case No. 20-cv-25318, Doc. 571, at 21-22 (S.D. Fla. June 21, 2023) (granting default judgment and a permanent injunction in similar timeshare-exit case) (a copy of the Order is attached as **Exhibit H**).

3.    The Balance of Hardship Favors Injunctive Relief.

The only hardships which Catalyst will face as a result of a permanent injunction would be the loss of the ability to disseminate false and deceptive advertising, to deceive consumers into purchasing Catalyst's illusory services, and to lure owners into breaching their contractual obligations; rights which Catalyst does not have. *See Buffets, Inc. v. LVDC II Inc.*, 2011 WL 13302716,

at *7 (M.D. Fla. Feb. 15, 2011) (finding the balance of equities weighed in favor of the plaintiff as the "[i]ssuance of [the] preliminary injunction will impose on Defendants no greater obligation than what is required of them by law"); *It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1333 (S.D. Fla. 2013) (defendant unlawfully using a trademark "could suffer no legitimate hardship by being enjoined from using it").

Accordingly, Plaintiffs has demonstrated that its need and right to injunctive relief outweighs any potential hardship to Catalyst.

4.   <u>Injunctive Relief Serves the Public Interest.</u>

Issuance of a permanent injunction will serve and protect the interests of the public by preventing Catalyst from continuing to harm innocent consumers, including Plaintiffs' timeshare owners, by deceiving them into paying exorbitant fees for illusory and unnecessary "services" whereby they are misled into wrongfully breaching their contracts with Plaintiffs. "[T]he public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Florida." *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1302 (S.D. Fla. 2016).

Plaintiffs' proposed Final Permanent Injunction, a copy of which as attached hereto as **Exhibit "A"**, sets forth prohibitions to prevent Catalyst from inducing Owners to breach their contracts, prohibit Catalyst from future solicitation of services to timeshare owners, prevent Catalyst from advancing

its scam by offering any product or service as a third-party timeshare exit company or assisting others in doing so, among other prohibitions. All of these prohibitions are necessary to prevent Catalyst from re-engaging in this same fraudulent conduct in the future.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order: (1) granting this motion; (2) entering Default Final Judgment on Counts III, VII, VIII, and IX against Catalyst; (3) awarding actual damages in favor of Wyndham and against Catalyst in the amount of $225,252.52 for the Leake, Blazkiewicz, and Rosemond contracts; (3) awarding disgorgement damages in favor of Wyndham and against Catalyst in the amount of $199,576.00 based on Catalyst's sales; (5) granting a Permanent Injunction against Catalyst in the form proposed in **Exhibit "A"**; and (6) granting such further relief as the Court deems just and proper.

## RULE 3.01(g) CERTIFICATION

Plaintiffs' counsel is unable to confer with Catalyst regarding the relief sought in this Motion because it is not represented by counsel and was previously defaulted for failing to timely retain such counsel in defense.

Dated: July 7, 2023                        Respectfully submitted,

| | |
|---|---|
| */s/ Glennys Ortega Rubin* <br> **ALFRED J. BENNINGTON, JR., ESQ.** <br> Florida Bar No. 0404985 <br> bbennington@shutts.com <br> **GLENNYS ORTEGA RUBIN, ESQ.** | and <br> **ERIC C. CHRISTU, ESQ.** <br> Florida Bar No. 434647 <br> ecchristu@shutts.com <br> **JONATHAN P. HART, ESQ.** |

| | |
|---|---|
| Florida Bar No. 556361<br>grubin@shutts.com<br>**CHRISTIAN M. LEGER, ESQ.**<br>Florida Bar No. 0100562<br>cleger@shutts.com<br>**SHUTTS & BOWEN LLP**<br>300 South Orange Avenue, Ste 1600<br>Orlando, Florida 32801<br>Telephone: (407) 835-6755<br>Facsimile:  (407) 849-7255 | Florida Bar No. 55982<br>jhart@shutts.com<br>**SHUTTS & BOWEN LLP**<br>525 Okeechobee Boulevard, Ste 1100<br>West Palm Beach, FL 33401<br>Telephone: (561) 835-8500<br>Facsimile: (561) 650-8530<br>*Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of July, 2023, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the Court's CM/ECF filing system, which will serve a copy via electronic mail upon all counsel of record.

*/s/ Glennys Ortega Rubin*
**GLENNYS ORTEGA RUBIN, ESQ.**